**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOSS STUDIO LLC, a Wyoming LLC; and REHAAB HAQUE, an individual, <br><br> Plaintiffs, <br><br> -against- <br><br> VLADISLAV POPOV, an individual; and ANDREI ACUÑA, an individual, <br><br> Defendants. | Case No.: 1:26-cv-04323-GBD <br><br><br> **AMENDED COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Boss Studio LLC and Rehaab Haque, by and through their undersigned attorneys, allege as follows:

## INTRODUCTION

1. Rehaab Haque helped rescue the Roblox game *Anime Vanguards* from demise. After the player count went into freefall, Haque stepped in as a co-owner and helped transform it into one of the top-ranked games in its genre on the Roblox platform. Because of his contributions, the game generated over $12 million in 2025 alone.

2. Rather than fairly compensate Haque for his work, Haque's partners—defendants Vladislav Popov and Andrei Acuña—launched a coordinated campaign to force him out of the business. In December 2025, Popov coerced Haque into purporting to reduce his ownership from 20% to 10% by threatening to quit the project and invoking graphic claims of self-harm. Just weeks later, defendants unilaterally stripped Haque of his remaining interest altogether. They removed him from the Roblox group, the Discord ownership channels, and all management functions. Defendants then continued to exploit Haque's code, visual effects, and other

copyrighted contributions to generate substantial ongoing revenue.  All the while, Haque was paid nothing.  Plaintiffs now seek to right this wrong.

## **PARTIES**

3.      Rehaab Haque is an individual domiciled in New York, New York.

4.      Boss Studio LLC is a Wyoming LLC with its sole member domiciled in Florida. Boss Studio is, and at all relevant times has been, the assignee of all claims, causes of action, and rights to recovery arising out of the facts alleged herein, including all accrued and continuing claims that were originally held by Haque.  Boss Studio is also a beneficial owner of the Protected Works and holds the right to revenue derived from the Protected Works, and holds the right to enforce the Protected Works.

5.      Vladislav Popov is an individual domiciled in Stockholm, Sweden.

6.      Andrei Acuña is an individual domiciled in the Philippines.

## **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a)(2) (diversity), and 28 U.S.C. § 1338(a) (original jurisdiction of copyright claims).  The court also has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over defendants pursuant to C.P.L.R. §§ 301 and 302(a)(1).  Haque is domiciled in New York and almost exclusively operated out of New York. Haque and defendants are partners who manage the Roblox game *Anime Vanguards*, and each jointly controlled their business, meaning that each of them are principals and agents of the others. This is confirmed by Haque's actions on behalf of the partnership, including signing contracts on their behalf.

9.      Popov and Acuña also communicated by audio and instant messenger with Haque in New York regarding the partnership and solicited his creative work on *Anime Vanguards* in New York.  They further instructed Haque to form a New York corporation for the partnership to use (though ultimately the partnership did not use the corporation).

10.     This Court additionally has personal jurisdiction over defendants pursuant to C.P.L.R. §§ 301 and 302(a)(3) because: (1) defendants committed tortious acts outside New York, (2) plaintiffs' breach of fiduciary duty and conversion causes of action arose from those acts, (3) the tortious acts caused an injury to Haque in New York, (4) defendants expected or should reasonably have expected that their actions would have consequences in New York, and (5) defendants derive substantial revenue from *Anime Vanguards* in interstate or international commerce.

11.     Alternatively, the Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  Plaintiffs' copyright claim arises under federal law, defendants are not subject to personal jurisdiction in the courts of general jurisdiction of any state, and the exercise of jurisdiction over defendants comports with due process.  Defendants committed an intentional act expressly aimed at the United States—namely, intentionally infringing the United States copyrights of Haque.  Defendants knew, or should have known, that their intentional infringement would cause harm to Haque in the United States.  Defendants aimed their conduct across the United States by distributing *Anime Vanguards* on the Roblox platform, which is headquartered in, and accessible across the United States.  Defendants advertise their games in English on Roblox, allowing and promoting United States users to play the games and generate revenue for defendants.

12.     Venue is proper under 28 U.S.C. § 1391(c)(3), because neither defendant is a reside in the United States.  Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because there is

no other venue in which an action may be brought and defendants are subject to personal jurisdiction in this forum.

### FACTUAL ALLEGATIONS

13.    *Anime Vanguards* is a highly successful Roblox game.  It has been favorited by more than 1.8 million users and visited over 1.8 billion times.

14.    This commercial success is the result of plaintiff Rehaab Haque's work. Defendants originally engaged Haque to provide programming services on September 9, 2024. Haque was not hired as an employee.  Defendants paid no payroll taxes, withheld no income taxes, provided no W-2, provided no benefits of any kind (no health insurance, no retirement contributions, no paid leave), and paid him only through Roblox group-payout splits in Robux, the platform's in-game currency.

15.    Around the time Haque was engaged to assist with *Anime Vanguards*, the game was performing well—seeing a user base of approximately 340,000 concurrent users.  Soon, though, *Anime Vanguards* started to decline.  The user base dropped from 100,000 concurrent players to less than 5,000 over the course of three months.

16.    Knowing that his talents could help turn things around, Haque put in extra hours to ensure that deadlines were met and that the game would remain popular.  His work for *Anime Vanguards* required substantial independent skill and judgment, including the design and implementation of core game systems, original visual-effects compositions, and graphic-asset creation.  Haque used his own equipment, worked from his own location, set his own hours, and was free to take on other projects during the relevant period.

17.    In recognition of Haque's successful work, defendants granted Haque a 6% revenue share interest in the game on November 19, 2024, with the expectation that he would continue to

ensure the success of the game.  After this point, Haque was no longer paid a salary, receiving just his revenue share.  His revenue share interest was soon after raised to 8%.

18.    Haque then approached defendants with a proposal: make him a co-owner of *Anime Vanguards*, increase his revenue share even further, and give him the reins to the game.  With this, he could then course-correct the collapse.  Defendants agreed, making Haque their partner and co-owner of *Anime Vanguards*, and granted him a 20% revenue share on December 13, 2024.

19.    Haque was then tasked with overseeing the overall game direction of *Anime Vanguards*, the development operation, the execution of updates, payment coordination, and hiring.  He worked closely with the game's update planner, maintaining final say over direction. He also wrote and maintained portions of the game's back-end systems, designed user-interface elements, created unit designs and other game assets, and fixed bugs throughout the codebase. This included: (1) creating over 50 core systems and mechanics in the game; (2) creating over 130 visual effects for units in the game; (3) programming the code for over 270 visual effects for units in the game; (4) programming the mechanics for over 40 units in the game; and (5) programming and/or creating visual effects for over 10 in-game cutscenes.

20.    Haque exercised substantial authority over *Anime Vanguards*.  He was designated an "Owner" in the game's official Discord server, participated in the ownership group chats, and was publicly identified to players and contributors as an owner of the game.  He made public and private announcements on behalf of the game, directed the scope and timing of updates, signed contracts and non-disclosure agreements with contributors on behalf of the project, and hired and onboarded developers.  Because Haque's partners did not wish to use their legal names in connection with *Anime Vanguards*, Haque served as the acting representative for the business in those dealings.

21.    In his role, Haque personally advanced funds to retain legal counsel for the partnership. He also signed contracts and confidentiality agreements as a partner, exposing himself to liability for contractual breaches.

22.    Haque and his partners also agreed that Haque should form a corporate entity to serve as a financial conduit for the partnership, given that Roblox accounts would periodically become unavailable if the parties received a copyright strike. As he was located in New York, Haque then formed a New York entity for the partnership's use. To-date, this entity ultimately has gone unused, though Haque personally bore the costs of its creation.

23.    Under Haque's leadership, *Anime Vanguards* recovered from its decline, returning to over 100,000 concurrent users once more, solidifying its position as the top-ranked game in the genre.

24.    Haque continued to oversee the game for the next year, culminating in the game's anniversary update, which saw record numbers of players. After this point, Haque decided to temporarily scale back his around-the-clock involvement in order to give himself a break following the significant update. But, even with his temporary reduction in workload, he continued to work full time on various aspects, like visual effects and scripting.

25.    When the game again experienced a performance decline, defendants placed the blame on Haque's shoulders. In public and private communications with the other owners and contributors, defendant Popov attacked Haque's work ethic, his treatment of other developers, and his compensation, even though Haque had consistently delivered the work product expected of him and that he held the largest ownership share of any individual involved with the game. On December 11, 2025, Popov posted an announcement to the game's development Discord stating that he would quit *Anime Vanguards* unless Haque reduced his ownership from 20% to 10%, and

he accused Haque of "narcissistic deflection" and other misconduct.  Popov further stated in that announcement that a prior argument with Haque had caused him to "self-harm" and "cut [his] leg deeply," and framed the ultimatum as necessary so that "everyone can actually be compensated for their work."  Haque succumbed to the pressure and agreed to cut his revenue share in half, receiving nothing in return for this diminished percentage.

26.     According to defendants, Haque's revenue share reduction was supposed to correspond to a reduction in his responsibilities.  In the same Discord exchange in which the reduction was discussed, the co-owners agreed to a plan under which Haque would "go down to 10%," a co-owner would assume responsibility for asset production, additional contributors would be hired to handle bug fixing, and Haque would focus going forward on "fullstack and VFX."  This supposed reduction in responsibilities never happened, though.  And Haque received no payment or other consideration for any purported transfer of his revenue share interest.

27.     Just a few weeks after Haque's revenue share was slashed, he was unilaterally removed from *Anime Vanguards* entirely.  On or about January 14, 2026, without prior notice and without his consent, defendants removed Haque's ownership group membership on Roblox, removed him from all ownership Discord channels, stripped him of his management position, and withheld all of his revenue share.  Defendants provided no notice and no consideration in connection with this removal.  They paid Haque nothing in connection with this removal.  Defendant Popov then falsely represented to developers in the *Anime Vanguards* community that Haque failed to perform work for *Anime Vanguards*.

28.     At the time Haque was wrongfully removed, he and defendants were in talks to create another Roblox game, partially using the assets from *Anime Vanguards*.

7

29.     Haque holds registered copyrights for his audiovisual contributions to *Anime Vanguards* (U.S. Copyright Reg. PA 2-584-333) and his source code (U.S. Copyright Reg. TXu 2-541-660).  Since removing Haque, defendants have continued to operate *Anime Vanguards* in a manner that reproduces, distributes, publicly displays, and includes derivative works of the code, visual effects, and other copyrighted works Haque authored.  Haque never designated any of his intellectual property used for *Anime Vanguards* as a "work made for hire."

30.     Defendants continue to generate substantial revenue from a game built on and around Haque's contributions while retaining the share of that revenue that he was supposed to be paid for use of his intellectual property.

31.     In 2025, *Anime Vanguards* generated more than $12 million as a result of Haque's management and intellectual property.  The game generated approximately $635,000 in December 2025, after Haque's ownership was improperly reduced to 10% (between December 11, 2025 and January 14, 2026).  In 2026, game has generated at least $2,700,000 through May 2026, and continues to generate substantial revenue.  The game is projected to earn over $52 million between 2026 and 2030.

32.     Defendants' unauthorized use of Haque's copyrighted works is continuing and ongoing.  Each day that defendants operate *Anime Vanguards* without Haque's authorization, they reproduce, distribute, publicly display, and prepare derivative works of Haque's copyrights, regenerating new revenue that they pocket, while he receives nothing.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Declaratory Judgment – Against All Defendants)**

33.     Plaintiffs fully reallege and reincorporate the above allegations.

34.     An actual and justiciable controversy exists between plaintiffs and defendants concerning the parties' respective rights in and to *Anime Vanguards*.

35.     The purported reduction of Haque's 20% revenue share interest to 10% on or about December 11, 2025 is void and without legal effect because Haque received no consideration in exchange for the relinquishment of half of his revenue share interest.  At most, Haque's assent was expressly conditioned on a corresponding reduction of his responsibilities, which was never honored.  Separately, the purported reduction was procured by duress, undue influence, or was otherwise unconscionable due to Popov's public disparagements and wrongful threats of self-harm, which foreclosed the meaningful exercise of Haque's free will and left him with no choice but to assent.

36.     The purported reduction of Haque's revenue share to 0% on or about January 14, 2026, was similarly void and without legal effect because Haque did not accept this reduction, received no consideration for the relinquishment of his revenue share, and/or had a legal right to his full revenue share.

37.     Under 28 U.S.C. §§ 2201 *et seq.*, plaintiffs are entitled to a declaration that the purported December 11, 2025 reduction of Haque's interest is void and without legal effect, and the January 14, 2026 reduced of Haque's interest is void and without legal effect.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Against All Defendants)

38.     Plaintiffs fully reallege and reincorporate the above allegations.

39.     On December 13, 2024, Haque and defendants entered into a binding contract under which Haque was made co-owner of *Anime Vanguards* and receive a 20% share of the game's revenue, in exchange for assuming leadership responsibilities for the game and continuing to

provide labor, capital, and a license to use his intellectual property in the game.  The contract was formed through the parties' mutual oral and written assent and was confirmed and implemented by their course of conduct, including the immediate adjustment of Haque's Roblox group-payout percentage to 20% effective December 13, 2024 and his designation as an "Owner" on the official *Anime Vanguards* Discord server.

40.     The contract was supported by valid consideration.  In exchange for ownership and revenue share interest, Haque assumed leadership of the game, committed to and provided full-time labor, undertook responsibility for hiring and managing contributors, signed contracts on behalf of his partners, and authored substantial original code, visual effects, and other creative works to be used in *Anime Vanguards*.

41.     The terms of the contract were sufficiently definite to be enforceable, including as to: (i) the ownership and revenue share interest (20%); (ii) the scope of Haque's responsibilities (leadership of the game, oversight of development, hiring and payment coordination, and creative contributions); (iii) Haque's contributions to the games, including code and assets; and (iv) the method of payment (the Roblox group-payout system, which automatically allocated the agreed percentage of the game's revenue to Haque).

42.     Haque fully performed his obligations under the contract.  He provided full-time labor for over a year, oversaw the development operation, executed updates, hired and managed contributors, signed contracts on behalf of his partners, and authored substantial creative works that drove the game's commercial success.

43.     Defendants breached their contract by reducing Haque's Roblox group-payout allocation to zero, removing him from the ownership-level Discord channels, stripping him of his

"Owner" designation and management role, and ceasing to pay him any share of *Anime Vanguards* revenue.

44.    Defendants' breaches caused Haque to suffer damages of at least $537,000 to date, accruing at an additional rate of approximately $198,000 per month.  The exact amount of damages caused by defendants' breach will be proven at trial, with a present value of no less than $7,036,800.

### THIRD CLAIM FOR RELIEF

**(Breach of the Duty of Good Faith and Fair Dealing – Against All Defendants)**

45.    Plaintiffs fully reallege and reincorporate the above allegations.

46.    Every contract under New York law includes an implied covenant of good faith and fair dealing.

47.    Defendants' agreement granting Haque a 20% ownership interest in *Anime Vanguards*, and the related revenue-sharing and management arrangements, carried with them an implied covenant of good faith and fair dealing.  To the extent these duties were not obligated by the express terms of the parties' contract, this covenant required defendants, among other things, to refrain from taking actions designed to deprive Haque of his ownership interest, his share of the revenue generated by the game, or his role in the management of the business.

48.    To the extent defendants' obligations were not expressly defined by the parties' contract, defendants breached the covenant of good faith and fair dealing by: (a) coercing Haque into purportedly relinquishing half of his ownership interest through threats and manipulative conduct; (b) unilaterally removing Haque from all ownership, management, and revenue-sharing arrangements associated with *Anime Vanguards*; and (c) continuing to exploit Haque's contributions to the game while denying him any share of the revenue those contributions generate.

49.     Defendants' breaches caused Haque to suffer damages of at least $537,000 to-date, accruing at an additional rate of approximately $198,000 per month.  The exact amount of damages caused by defendants' breach will be proven at trial, with a present value of no less than $7,036,800.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duties – Against All Defendants)

50.     Plaintiffs fully reallege and reincorporate the above allegations.

51.     As a result of the partnership between Haque and defendants, a fiduciary relationship existed between Haque and defendants which gave rise to duties of loyalty, care, and good faith on the part of the defendants to Haque.

52.     Defendants breached these duties to Haque by: (a) coercing Haque into purportedly relinquishing half of his revenue share interest without consideration; (b) unilaterally expelling Haque from the business without notice, without cause, and without any buyout of his interest; (c) converting to their own use revenue streams that rightfully belong to Haque; (d) continuing to operate and profit from a business built on Haque's creative contributions while excluding him from participation in that business; (e) failing to account to Haque for his share of the profits and assets of the enterprise; and (f) making public misrepresentations to the *Anime Vanguards* developer community about Haque's failure to work.

53.     Haque suffered damages as a result of defendants' breaches of fiduciary duty of at least $537,000 to-date, accruing at an additional rate of approximately $198,000 per month. Alternatively, defendants have profited from their breaches of fiduciary duties in an amount of at least $537,000, accruing at an additional rate of approximately $198,000 per month, which is

subject to disgorgement.  The exact amount of damage caused by defendants' breaches of their fiduciary duties will be proven at trial, with a present value of no less than $7,036,800.

54.     Defendants acted wantonly, willfully, or maliciously with respect to Haque's rights. Plaintiffs are therefore entitled to punitive damages for defendants' breaches of their fiduciary duties, equal to, at the least, the damages or profits stemming from the breach of fiduciary duties, not less than $7,036,800.

55.     The books, records, and revenue streams of *Anime Vanguards* are within the exclusive possession and control of defendants.  The amount of revenue generated by the game, the amount of money defendants have paid themselves and others from that revenue, and the value of the assets of the enterprise are not known to Haque and cannot be determined without a formal accounting.  Haque has no adequate remedy at law and is entitled to an order directing defendants to render a full and complete accounting of all revenue, profits, expenses, and distributions relating to *Anime Vanguards* from December 11, 2025 to the present, and to pay to Haque the amounts shown by such accounting to be due and owing to him.

56.     Defendants have been unjustly enriched at Haque's expense by retaining for themselves revenue, profits, ownership interests, and other economic benefits that rightfully belong to Haque.  Those ill-gotten gains include, without limitation, Haque's share of the revenue generated by *Anime Vanguards* from December 11, 2025 to the present, and any assets acquired with those funds.  Haque has no adequate remedy at law, and equity and good conscience require that the Court impose a constructive trust in his favor over the property, funds, and assets defendants have wrongfully retained at his expense, and order defendants to convey those assets to Haque.

**FIFTH CLAIM FOR RELIEF**

**(Conversion – Against All Defendants)**

57.     Plaintiffs fully reallege and reincorporate the above allegations.

58.     Haque has a superior right of possession to specific, identifiable sums of money representing his 20% share of the revenue generated by *Anime Vanguards*.

59.     Defendants implemented the parties' revenue-sharing arrangement through the Roblox group-payout system associated with *Anime Vanguards*, which automatically allocated a defined percentage of the game's revenue to each participating owner.  Through that system, Haque received a 20% share of *Anime Vanguards* revenue (later 10% following the void reduction).  Those funds are specifically identifiable from the game's Roblox payout records and are segregable as a defined percentage of the revenue generated during the relevant periods.

60.     Defendants intentionally exercised unauthorized dominion and control over those funds when they unilaterally removed Haque from the Roblox payout group, reallocated his revenue share to themselves, and continued to receive and retain amounts rightfully belonging to Haque.  Defendants' unilateral removal of Haque from the Roblox group-payout allocation destroyed Haque's participation in the account as to the whole but did not extinguish his ownership interest in his defined share of the funds that the account received and continues to receive.

61.     Haque made a demand to defendants that they provide him with the funds to which he had a superior right of possession.  Alternatively, defendants had full knowledge of the defect in their title to these funds and knew of Haque's identity.

62.     Defendants' conversion of Haque's funds has caused him substantial damages in an amount to be proven at trial, but not less than $537,000 to-date, accruing at an additional rate

of approximately $198,000 per month.  The exact amount will be proven at trial, with a present value of no less than $7,036,800.

63.    Defendants acted wantonly, willfully, or maliciously with respect to Haque's rights. Plaintiffs are therefore entitled to punitive damages for defendants' conversion equal to, at the least, the amount converted by defendants, not less than $7,036,800.

## SIXTH CLAIM FOR RELIEF

### (Copyright Infringement – Against All Defendants)

64.    Plaintiffs fully reallege and reincorporate the above allegations.

65.    Haque's code and graphics included in *Anime Vanguards* constitute original works that are copyrightable literary, pictorial, graphic, and/or audiovisual works under 17 U.S.C. §§ 101 *et seq.* (the "Protected Works").

66.    Haque is the owner of the Protected Works.  He holds registered copyrights for his audiovisual contributions to the game (U.S. Copyright Reg. PA 2-584-333) and his source code (U.S. Copyright Reg. TXu 2-541-660).

67.    Haque created the Protected Works as their sole author.  Each Protected Work is an independently-authored module that has separate existence and function apart from the *Anime Vanguards* game.  Haque did not at any time intend that authorship of his code or visual effects be merged with anyone else's authorship, and he did not regard himself as a co-author with Popov, Acuña, or any other person.

68.    Defendants, without authorization, reproduced, prepared derivative works of, distributed copies of, and publicly displayed the Protected Works in violation of 17 U.S.C. §§ 106 and 501.

15

69. Defendants knew that their conduct infringed the Protected Works, or acted with reckless disregard for, or willful blindness to, Haque's rights. Defendants were put on notice of their infringing activities and continue to infringe the Protected Works.

70. Plaintiffs are entitled to recover their actual damages or defendants' profits for the infringement under 17 U.S.C. § 504(b). Plaintiffs are entitled to an award of at least $1,700,000 to-date, and these damages continue to accumulate at a rate of approximately $397,000 per month. The exact amount will be proven at trial, not less than $8,150,480.

71. Alternatively, plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c), for up to $150,000 per work infringed in light of defendants' willful infringement.

72. In the alternative as well, if the Protected Works are deemed joint works under 17 U.S.C. § 101, Haque is entitled as a joint copyright owner to an accounting of, and a share of, the profits defendants have derived from exploitation of the joint work, in a proportion to be determined at trial, with a present value of not less than $5,026,328.

73. Defendants' infringement is ongoing. Defendants continue to reproduce, distribute, publicly display, and prepare derivative works of the Protected Works through their continued operation, monetization, and updating of *Anime Vanguards*. Plaintiffs are entitled, under 17 U.S.C. § 502 to forward-looking equitable relief in the form of a court-ordered ongoing royalty under § 502, at a rate that fairly compensates plaintiffs for that continuing use, not less than 20% of *Anime Vanguards*' revenue.

74. Plaintiffs are entitled to recover their full costs and attorney fees under 17 U.S.C. § 505.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment – Against All Defendants)

75.     Plaintiffs fully reallege and reincorporate the above allegations.

76.     Plaintiffs plead this claim in the alternative.

77.     Haque conferred substantial benefits on defendants by, among other things: (1) authoring code, visual effects, animations, and other creative works that became integral to *Anime Vanguards*; (2) providing leadership that reversed the game's decline and restored its revenue-generating user base; and (3) hiring and managing contributors.

78.     Defendants accepted those benefits with knowledge of Haque's contributions and with the understanding that Haque would be compensated through his ownership interest and revenue share.  Defendants have retained and continue to retain the value of those benefits without compensating Haque.

79.     Equity and good conscience require defendants to disgorge the benefits they have unjustly retained at Haque's expense, including the revenue they have received and continue to receive from the exploitation of Haque's creative contributions and ownership interest.  These unjust benefits total at least $1,700,000 to-date, and continue to accumulate at a rate of approximately $397,000 per month.  The exact amount will be proven at trial, not less than $8,150,480.

## JURY DEMAND

80.     Plaintiffs demand a jury trial on all issues triable by right of jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

1.     Judgment in favor of plaintiffs and against defendants;

2.      A declaration that the purported December 2025 reduction of Haque's interest in *Anime Vanguards* is void and without legal effect.

3.      On plaintiffs' Second Claim for Relief, an award of damages in an amount to be proven at trial, not less than $7,036,800;

4.      On plaintiffs' Third Claim for Relief, an award of damages in an amount to be proven at trial, not less than $7,036,800;

5.      On plaintiffs' Fourth Claim for Relief, an award of damages in an amount to be proven at trial, not less than $7,036,800;

6.      On plaintiffs' Fifth Claim for Relief, an award of damages in an amount to be proven at trial, not less than $7,036,800;

7.      On plaintiffs' Sixth Claim for Relief, an award of damages in an amount to be proven at trial, not less than $8,150,480.

8.      On plaintiffs' Seventh Claim for Relief, an award of damages in an amount to be proven at trial, not less than $8,150,480.

9.      Punitive damages in an amount sufficient to punish defendants for their intentional misconduct and to deter similar conduct in the future, not less than $7,036,800;

10.     An order under 17 U.S.C. § 502 imposing an ongoing royalty on defendants' continued exploitation of the Protected Works, at a rate to be determined by the Court but not less than 20% of the gross revenue generated by *Anime Vanguards* from the date of judgment forward;

11.     Pre-judgment and post-judgment interest;

12.     Any further relief in law or equity that plaintiffs are entitled to or which the Court deems appropriate.

DATED: July 10, 2026.

MARKOWITZ HERBOLD PC

*/s/ Harry B. Wilson*

Joseph M. Levy, *pro hac vice forthcoming*
JosephLevy@MarkowitzHerbold.com
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

Harry B. Wilson, NY # 5864483
HarryWilson@MarkowitzHerbold.com
603 3rd Avenue, Floor 16
New York, NY  10158
Telephone: (212) 909-2610

*Attorneys for Plaintiff Boss Studio LLC*

PERAINO MALINOWSKI LLP

David M. Peraino
dperaino@pmlaw.nyc
152 Madison Avenue, 16th Floor
New York, New York 10016
Telephone: (646) 930-8602

*Attorneys for Plaintiff Rehaab Haque*

19