UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOSS STUDIO LLC, a Wyoming LLC; and REHAAB HAQUE, an individual,

Plaintiffs,

-against-

VLADISLAV POPOV, an individual; and ANDREI ACUÑA, an individual,

Defendants.

Case No.: 1:26-cv-04323-GBD

**DEFENDANT VLADISLAV POPOV'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

FRANKFURT KURNIT KLEIN + SELZ, P.C.
Caren Decter
Regina Gerhardt, Esq.
Peter A. Devlin, Esq.
28 Liberty Street, 35th Floor
New York, New York 10005
Telephone: (212) 980-0120
cdecter@fkks.com
rgerhardt@fkks.com
pdevlin@fkks.com

Jeremy S. Goldman
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
jgoldman@fkks.com

*Attorneys for Defendant Vladislav Popov*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....1

RELEVANT ALLEGATIONS ....3

A. Defendants Entered Into An Informal Arrangement With Haque to Provide Video-Game Development Services. ....3

B. Haque Developed Code and In-Game Assets for the Game. ....4

C. Haque's Revenue Share Was Reduced Along With His Responsibilities, And Ended When His Services Ended. ....5

D. Boss Studio—Anime Vanguards' "Primary" Competitor—Acquired Haque's Claims. ....5

PROCEDURAL HISTORY ....6

STANDARD OF REVIEW ....6

ARGUMENT ....7

I. PLAINTIFFS' CONTRACT-RELATED CLAIMS FAIL ....7

A. Plaintiffs' Contract Claim Fails Because Plaintiffs Fail To Plead An Enforceable Contract That Obligates Defendants To Pay Haque In Perpetuity. ....7

B. Plaintiffs' Implied Covenant Claim Fails Because It Is Duplicative of Plaintiffs' Deficient Contract Claim. ....10

C. Plaintiffs' Declaratory Judgment Claim Fails Because It Is Duplicative of The Other Claims. ....12

D. Plaintiffs' Unjust Enrichment Claim Fails Because It Arises From the Same Subject Matter As The Parties' Alleged Agreement. ....13

II. THE COURT FOUND NO LIKELIHOOD OF SUCCESS ON PLAINTIFFS' BREACH OF FIDUCIARY DUTY, CONVERSION, AND COPYRIGHT CLAIMS, AND THEY SHOULD NOW BE DISMISSED ....15

A. The Breach Of Fiduciary Duty Claim Fails Because Plaintiffs Do Not Allege A Partnership Or Other Fiduciary Relationship. ....16

B. Plaintiffs' Conversion Claim Fails Because Plaintiffs Fail To Allege A Taking. ....21

C. Plaintiffs' Copyright Claim Fails Because Haque Does Not Own An Enforceable Copyright In His Contributions To The Game. ....23

III. FURTHER AMENDMENT OF THE COMPLAINT WOULD BE FUTILE ....25

CONCLUSION ....25

CERTIFICATE OF COMPLIANCE ....27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015)........23, 24, 25

*ACLI Gov't Sec., Inc. v. Rhoades*,
813 F. Supp. 255 (S.D.N.Y.), *aff'd sub nom. Gov't v. Rhoades*, 14 F.3d 591 (2d Cir. 1993)........16

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023)........12

*In re Akanmu*,
502 B.R. 124 (Bankr. E.D.N.Y. 2013)........14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........6, 7

*Atari Games Corp. v. Oman*,
888 F.2d 878 (D.C. Cir. 1989)........15

*Athayde v. Dogpound Fitness, Inc.*,
2024 WL 3876181 (S.D.N.Y. Aug. 20, 2024)........10

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
485 F. Supp. 2d 224 (E.D.N.Y. 2007)........12

*Banco Espiritu Santo de Investimento, S.A. v. Citibank, N.A.*,
2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003), *aff'd* 110 Fed. App'x 191 (2d Cir. 2004)........17

*Barnet v. Drawbridge Special Opportunities Fund LP*,
2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014)........21

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*,
2017 WL 2118342 (N.D. Cal. May 16, 2017)........24, 25

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)........10

*Canzona v. Atanasio*,
118 A.D.3d 837 (2d Dep't 2014)........8

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)........12

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
976 F.3d 239 (2d Cir. 2020)....................8, 11

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012)....................13

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....................25

*D&L Holdings v. Goldman Co.*,
287 A.D.2d 65 (1st Dep't 2001)....................10, 11

*Daub v. Future Tech Enter., Inc.*,
65 A.D.3d 1004 (2d Dep't 2009)....................21, 22

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
309 F. Supp. 3d 89 (S.D.N.Y. 2018)....................12

*Elma RT v. Landesmann Int'l Mktg. Corp.*,
2000 WL 297197 (S.D.N.Y. Mar. 22, 2000)....................21, 22

*Engelhard Corp. v. Research Corp.*,
268 A.D.2d 358 (2d Dep't 2000)....................11

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)....................23

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015)....................24, 25

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012)....................13

*Grand Pac. Fin. Corp. v. 97-111 Hale, LLC*,
123 A.D.3d 764 (2d Dep't 2014)....................17

*Growblox Scis., Inc. v. GCM Admin. Servs., LLC*,
2015 WL 3504208 (S.D.N.Y. June 2, 2015)....................19

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)....................6

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)....................7

*Hines v. Chappell Music Corp.*,
2022 WL 3646206 (S.D.N.Y. Aug. 23, 2022)....................15

*Indep. Disc. Corp. v. Bressner*,
47 A.D.2d 756 (2d Dep't 1975) ....................21

*John Wiley & Sons, Inc. v. DRK Photo*,
882 F.3d 394 (2d Cir. 2018)....................23

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
52 N.Y.2d 105 (1981) ....................8

*Khurana v. Wahed Inv., LLC*,
2019 WL 1430433 (S.D.N.Y. Feb. 26, 2019)....................10

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*,
320 F. Supp. 2d 164 (S.D.N.Y. 2004)....................16, 19, 20

*Lebedev v. Blavatnik*,
193 A.D.3d 175 (1st Dep't 2021) ....................19

*Lucente v. IBM Corp.*,
310 F.3d 243 (2d Cir. 2002)....................25

*M/A-COM Sec. Corp. v. Galesi*,
904 F.2d 134 (2d Cir. 1990)....................10, 11

*MG W. 100 LLC v. St. Michael's Protestant Episcopal Church*,
127 A.D.3d 624 (1st Dep't 2015) ....................13

*Miller v. Wells Fargo Bank, N.A.*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014)....................12

*Murphy v. Am. Home Prods. Corp.*,
58 N.Y.2d 293 (1983) ....................11

*Nasso v. Bio Reference Lab'ys, Inc.*,
892 F. Supp. 2d 439 (E.D.N.Y. 2012) (Bianco, J.)....................22

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997)....................14

*Next/Ingle Holdings, LLC v. GSPP HOLDCO III, LLC*,
2026 WL 1398474 (S.D.N.Y. May 19, 2026) ....................16, 17

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ....................7

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*,
497 F. Supp. 2d 541 (S.D.N.Y. 2007)....................7

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
88 A.D.2d 883 (1st Dep't 1982) ....................21

*Piuggi v. Good for You Prods. LLC*,
739 F. Supp. 3d 143 (S.D.N.Y. 2024)....................15

*Priolo Commc'ns, Inc. v. MCI Telecommunications Corp.*,
248 A.D.2d 453 (2d Dep't 1998) ....................21, 22

*Reis, Inc. v. Lennar Corp.*,
2016 WL 3702736 (S.D.N.Y. July 5, 2016) ....................6, 7

*Rowe v. Great Atl. & Pac. Tea Co.*,
46 N.Y.2d 62 (1978) ....................11

*Scott v. Rosenthal*,
2000 WL 1863542 (S.D.N.Y. Dec. 20, 2000) ....................19

*Slabakis v. Schik*,
164 A.D.3d 454 (1st Dep't 2018) ....................18, 19, 20

*SoFi Classic S.A. de C.V. v. Hurowitz*,
444 F. Supp. 2d 231 (S.D.N.Y. 2006)....................13

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ....................9

*Steinbeck v. Gerosa*,
4 N.Y.2d 302 (1958) ....................18

*Stern Elecs., Inc. v. Kaufman*,
669 F.2d 852 (2d Cir. 1982)....................15

*Tasini v. AOL, Inc.*,
851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012)....................14

*Tobias v. Notations, Inc.*,
2015 WL 4654454 (S.D.N.Y. July 20, 2015) ....................12

*Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*,
87 N.Y.2d 36 (1995) ....................21

*Wolff v. Rare Medium, Inc.*,
210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)....................7

*Zeising v. Kelly*,
152 F. Supp. 2d 335 (S.D.N.Y. 2001)....................18

**Statutes**

17 U.S.C. § 102(a) ....................23, 24

17 U.S.C. § 106....................15

17 U.S.C. § 301....................15

Copyright Act of 1976, 17 U.S.C. §§ 101-1332 (2012) ....................14

N.Y. P'ship Law § 11(3)....................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................7

Defendant Vladislav Popov ("Popov") submits this memorandum of law in support of his motion to dismiss the Amended Complaint (Dkt. 20).[1]

## INTRODUCTION

*Anime Vanguards* (the "Game") is a popular anime-themed video game on the Roblox platform. In September 2024, Defendants sought to improve the Game and boost revenue. They engaged plaintiff Rehaab Haque ("Haque") to create new visual effects for the Game. This was an informal arrangement among young video-game developers. There was no written agreement, and Haque was not engaged for a fixed term. At most, there was an implied-in-fact contract whereby Haque agreed to provide programming services in exchange for a 20% revenue share in the Game. In December 2025, Haque decided to scale back his involvement in the Game so that, in his own words, he could "give himself a break." He agreed to reduce his revenue share to 10% in exchange for a reduction in his responsibilities. The relationship between Haque and Defendants soured shortly thereafter, and Defendants terminated his services in January 2026.

In this lawsuit, Plaintiffs claim that Defendants were obligated to continue paying Haque after he was terminated.[2] The allegations do not support this assertion. Plaintiffs point to no agreement entitling Haque to continue receiving a revenue share or other compensation after he ceased providing services. Rather, the Amended Complaint describes an at-will arrangement for services that either side was free to end. Haque's revenue share was valued in accordance with the level of services he was providing. When his service commitment decreased, his revenue share

[1] Defendant Andrei Acuña ("Acuña") resides in the Philippines and has not yet been served with the Amended Complaint. That said, we note that because of Plaintiffs' group pleading, the arguments for dismissal set forth herein apply equally to the claims against Acuña.

[2] Haque has apparently assigned his claims to plaintiff Boss Studio LLC, which operates *Anime Last Stand*—the "primary competitor" to *Anime Vanguards*. Having failed to displace *Anime Vanguards* in the market, Boss Studio now seeks to do so through this litigation. Plaintiffs gave away that goal when they filed a baseless *ex parte* motion to freeze $8 million of the Game's operating revenue.

decreased from 20% to 10%. And when he stopped working entirely, he was no longer entitled to compensation, so his revenue share decreased to zero.

There was no breach of contract. To the extent the Amended Complaint sufficiently alleges the existence of an enforceable agreement, Plaintiffs do not contest that Defendants paid Haque his 20% revenue share from December 2024 through December 2025. Plaintiffs also do not contest that Defendants paid Haque his 10% revenue share from December 2025 through his January 2026 termination. Defendants thus paid Haque as allegedly promised. Plaintiffs allege no obligation to continue paying Haque after his termination.

Plaintiffs cannot use the implied covenant of good faith and fair dealing to manufacture the very term Plaintiffs failed to plead: a promise to pay Haque in perpetuity. Nor can Plaintiffs recast their deficient contract claim as a claim for unjust enrichment or declaratory judgment. As alleged, these claims all turn on the same issue—whether Defendants were entitled to reduce and then end Haque's revenue share. Plaintiffs' failure to plead an enforceable agreement to pay Haque in perpetuity is fatal to all these claims.

Plaintiffs' add-on claims for conversion, breach of fiduciary duty, and copyright infringement also fail as a matter of law. In denying Plaintiffs' application for a TRO and preliminary injunction, this Court held that Plaintiffs failed to show a likelihood of success on these claims. Indeed, the factual allegations fail to state a claim as a matter of law. As to conversion, Plaintiffs allege no unauthorized taking; they merely attempt to repackage their contract claim as conversion. This is not permitted. The fiduciary duty claim fails because Plaintiffs plead no partnership. What they allege is a share of gross revenue paid for services, which New York law does not treat as a partnership. Finally, the copyright claim fails because, under controlling Second Circuit law, Haque does not own an independent copyright interest in

his individual creative contributions to the Game, which is a single, integrated work of authorship.

For these reasons, discussed in further detail below, the Court should dismiss the Amended Complaint in its entirety. Because these defects go to the core of Plaintiffs' legal theories, and because Plaintiffs have already amended their complaint and cannot cure these defects with further amendment, dismissal should be with prejudice.

## RELEVANT ALLEGATIONS

### A. Defendants Entered Into An Informal Arrangement With Haque to Provide Video-Game Development Services.

Plaintiffs allege that Defendants "engaged" Haque "to provide programming services" for their Roblox video game *Anime Vanguards* in September 2024. Am. Compl. (Dkt. 20) ¶ 14. At the time Defendants engaged Haque, the Game was already "performing well," having amassed "a user base of approximately 340,000 concurrent users." *Id.* ¶ 15. Haque did not create the Game; he developed components for a game that had already been built and had already achieved success. *Id.* ¶¶ 14-20.

Haque was paid for those services. He was first paid fixed compensation. *Id.* ¶ 17. Plaintiffs allege that on November 19, 2024, Defendants replaced that compensation structure with a 6% share of the Game's revenue, after which, by Plaintiffs' own account, Haque began "receiving just his revenue share" in lieu of any fixed compensation. *Id.* According to Plaintiffs, that revenue share was briefly raised to 8%, and then to 20% effective December 13, 2024. *Id.* ¶¶ 17-18. Haque's 20% share was paid automatically through the Roblox group-payout system. *Id.* ¶¶ 39, 59.

Plaintiffs admit that there was no employment agreement or engagement for a fixed term. Plaintiffs allege that Haque "was not hired as an employee," that Defendants "paid no payroll taxes, withheld no income taxes, provided no W-2, [and] provided no benefits of any kind," and that Haque "used his own equipment, worked from his own location, set his own hours, and was

free to take on other projects during the relevant period." *Id.* ¶¶ 14, 16.

**B. Haque Developed Code and In-Game Assets for the Game.**

Consistent with Haque's role, every contribution by Haque was made for the existing Game. Plaintiffs allege that Haque created "over 50 core systems and mechanics *in the game*," "over 130 visual effects for units *in the game*," "the code for over 270 visual effects for units *in the game*," "the mechanics for over 40 units *in the game*," and "visual effects for over 10 *in-game* cutscenes." *Id.* ¶ 19 (emphases added); *accord* Haque Decl. (Dkt. 29) ¶ 4 (same). Plaintiffs do not allege that Haque brought any preexisting, independently-created work to the project; every asset they describe was authored during his engagement for incorporation into *Anime Vanguards*.

Plaintiffs allege that Haque holds two federal copyright registrations relating to those contributions—one for source code (Reg. TXu 2-541-660) and one for audiovisual works (Reg. PA 2-584-333)—and that he "never designated any of his intellectual property used for *Anime Vanguards* as a 'work made for hire.'" Am. Compl. (Dkt. 20) ¶ 29. Plaintiffs allege, in conclusory terms, that "[e]ach Protected Work is an independently-authored module that has separate existence and function apart from the *Anime Vanguards* game." *Id.* ¶ 67. That characterization cannot be reconciled with Plaintiffs' detailed allegations that each work was created "in the game" and "for units in the game." *Id.* ¶ 19; *accord* Haque Decl. (Dkt. 29) ¶ 6 (stating he created his copyright registered audiovisual works "for the Game").

Plaintiffs expressly disclaim joint authorship of the Game. They allege that Haque "did not at any time intend that authorship of his code or visual effects be merged with anyone else's authorship, and he did not regard himself as a co-author." Am. Compl. (Dkt. 20) ¶ 67; *accord* Haque Decl. (Dkt. 29) ¶ 5; Pls.' TRO (Dkt. 26) at 6 n.2 ("*Anime Vanguards* is not a joint work").

### C. Haque's Revenue Share Was Reduced Along With His Responsibilities, and Ended When His Services Ended.

Plaintiffs' own allegations trace how the relationship between Haque and Defendants wound down as the level of Haque's work decreased. After the Game's anniversary update, Haque "decided to temporarily scale back his around-the-clock involvement." Am. Compl. (Dkt. 20) ¶ 24. Then, on or about December 11, 2025, Haque "agreed" to reduce his revenue share from 20% to 10%. *Id.* ¶ 25. That reduction was in exchange for "a reduction in his responsibilities"; namely, Haque would "go down to 10%," someone else would "assume responsibility for asset production," "additional contributors would be hired to handle bug fixing," and Haque would "focus going forward on 'fullstack and VFX.'" *Id.* ¶ 26.

Approximately five weeks later, on or about January 14, 2026, the relationship ended entirely. Plaintiffs allege that Defendants removed Haque from the Roblox group, eliminated his role, and set his "group-payout allocation to zero," after which Defendants "cease[d] to pay him any share of *Anime Vanguards* revenue." *Id.* ¶¶ 27, 43. Plaintiffs do not allege that Haque performed any services for the Game after that date, or that Defendants had agreed to continue Haque's engagement for a specific term beyond January 14, 2026.

Plaintiffs allege that while Haque was working, he received the full percentage allocated to him; nothing was ever withheld. *Id.* ¶¶ 17-18, 26. After January 14, 2026, Plaintiffs allege that his allocation was set to zero and that the Game's revenue thereafter flowed in its entirety into Defendants' own accounts. *Id.* ¶¶ 27, 43.

### D. Boss Studio—Anime Vanguards' "Primary" Competitor—Acquired Haque's Claims.

At some point after his termination, Haque allegedly assigned "all claims, causes of action, and rights to recovery arising out of the facts alleged herein" to Boss Studio—"the primary competitor to *Anime Vanguards*." *See* Ha Decl. (Dkt. 28) ¶¶ 4-5; Am. Compl. (Dkt. 20) ¶ 4.

Plaintiffs further allege that Boss Studio "is also a beneficial owner of the Protected Works and holds the right to revenue derived from" them. Am. Compl. (Dkt. 20) ¶ 4. However, they do not allege Haque assigned his purported copyrights to Boss Studio.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint on May 22, 2026 and the Amended Complaint on July 14, 2026. On July 24, 2026, Plaintiffs filed an *ex parte* application for a temporary restraining order, a preliminary injunction, and expedited discovery, seeking to freeze more than $8 million in revenue generated by *Anime Vanguards*. Because a pre-judgment asset freeze is unavailable to secure a claim for money damages, *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310 (1999), Plaintiffs expressly disclaimed reliance on their contract claim and premised the requested freeze on their copyright, breach of fiduciary duty, and conversion claims as the asserted sources of an equitable interest. Decter Decl., Ex. A (Dkt. 44) at 11:24-12:5. The Court denied Plaintiffs' application on July 30, 2026, holding that it was not "appropriate," and that Plaintiffs had not shown a likelihood of success on the merits of their copyright, conversion, and breach of fiduciary duty claims. *Id.* at 44:20-21, 44:10-13. The Court further indicated that it would review any motion to dismiss filed "right away." *Id.* at 45:17.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must demonstrate "'more than a sheer possibility that a defendant has acted unlawfully'; stating a facially plausible claim requires pleading facts that enable the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Reis, Inc. v. Lennar Corp.*, 2016 WL 3702736, at *3 (S.D.N.Y. July 5, 2016) (quoting *Iqbal*, 556 U.S. at 678). The plaintiff's factual

allegations must be enough to raise a right to relief above a speculative level. *Id.* (citation omitted).

A complaint must plead actual facts. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In deciding the 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor." *Reis*, 2016 WL 3702736, at *3. "In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, 2004 WL 112948, at *2 (S.D.N.Y. Jan. 22, 2004).

## ARGUMENT

## I. PLAINTIFFS' CONTRACT-RELATED CLAIMS FAIL[3]

### A. Plaintiffs' Contract Claim Fails Because Plaintiffs Fail To Plead an Enforceable Contract That Obligates Defendants To Pay Haque In Perpetuity.

To state a claim for breach of contract, a complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (dismissing breach of contract claim because the plaintiff "fail[ed] to allege the specific provision of the Agreement that [Defendant] allegedly breached—an essential requirement for a breach of contract claim").

[3] Given Plaintiffs' allegation that Haque assigned all his claims to Boss Studio, it is unclear how Haque has standing to assert any claims in this lawsuit. *See* Am. Compl. (Dkt. 20) ¶ 4.

"Generally, a party alleging a breach of contract must demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement." *Canzona v. Atanasio*, 118 A.D.3d 837, 839 (2d Dep't 2014) (internal quotations and citation omitted). Before "the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening, would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981). New York law is "well settled" that a contract of "indefinite duration" is "terminable at will unless the contract states *expressly and unequivocally that the parties intend to be perpetually bound*." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 245 (2d Cir. 2020) (emphasis added).

Here, Plaintiffs' contract claim fails because Plaintiffs do not allege an obligation to pay Haque for any length of time, much less in perpetuity. As the Court noted at the TRO hearing, Plaintiffs "are describing a relationship where [Haque] was working, and his compensation was a percentage of the profit." Decter Decl., Ex. A (Dkt. 44) at 19:1-3. Plaintiffs do not allege an agreement stating "expressly and unequivocally that the parties intend to be perpetually bound"; under New York law, the engagement was therefore terminable at will. *See Compania*, 976 F.3d at 245. The Court summed it up at the TRO hearing: Haque is not currently "being paid for his current skill because they are not utilizing him." Decter Decl., Ex. A (Dkt. 44) at 18:10-11. There is nothing unlawful about that.

In order to succeed on their contract claim, Plaintiffs would need to convince the Court to rewrite the parties' agreement to impose a perpetual payment obligation that Defendants never agreed to. However, courts cannot create new contractual rights that the parties themselves failed

to bargain for. *See Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015) ("The provisions of the parties' agreements establish the rights of the parties and prevail over conclusory allegations in the complaint . . . The Court cannot supply a specific obligation the parties themselves did not spell out.") (internal quotations and citations omitted).

Here, Defendants agreed to give Haque a percentage of revenue in exchange for providing labor, management services, and creative contributions to *Anime Vanguards*. *See* Am. Compl. (Dkt. 20) ¶¶ 16-19, 39-42; Decter Decl., Ex. A (Dkt. 44) at 19:4-5 (Plaintiffs' counsel admitting that Haque was "being compensated for the work he did in part"). The fact that Haque agreed to decrease his revenue share from 20% to 10% when he "decided to temporarily scale back his around-the-clock involvement" in December 2025 evidences that his compensation was intended to be proportional to the services he was rendering. *See* Am. Compl. (Dkt. 20) ¶¶ 24-25. In exchange for the 10% decrease in his revenue share, certain of Haque's responsibilities would be assigned to other contributors, *id.* ¶ 26, who would receive their own revenue share as compensation. Plaintiffs cannot convert that straightforward compensation arrangement into something fundamentally different: a perpetual entitlement to future revenues that survives the termination of the parties' relationship. To get there, the Court would have to imply terms that the parties are not alleged to have adopted, including a fixed duration, restrictions on Defendants' ability to terminate the relationship, a post-termination payment obligation, and an irrevocable right to share in future revenues.

Finally, Plaintiffs cannot save their deficient contract claim by recharacterizing Haque's revenue share as an "ownership interest" that entitled him to a perpetual revenue share. *Id.* ¶¶ 2, 25, 41. To enforce a contractual equity/ownership interest, a plaintiff must allege "the essential terms of the purported contract with sufficient clarity," including "the nature of the 'equity' [the

plaintiff] was to receive under the contract." *Khurana v. Wahed Inv., LLC,* 2019 WL 1430433, at *9 (S.D.N.Y. Feb. 26, 2019). Plaintiffs fail to allege the form of equity, type of equity, number of shares, or dilution, accrual, or vesting rules, providing "no hint as to how – or when – the value of his equity stake was to be measured." *Id.*; *see also Athayde v. Dogpound Fitness, Inc.*, 2024 WL 3876181, at *3 (S.D.N.Y. Aug. 20, 2024) (finding terms too indefinite to be enforceable where contract was missing authority to issue equity, form of equity (preferred, common), type (voting, non-voting), dilution and accrual rules). Furthermore, to the extent Plaintiffs allege that the revenue share was in exchange for a "license to use [Haque's] intellectual property in the game," (Am. Compl. (Dkt. 20) ¶ 39) that claim necessarily fails for the same reasons the copyright claim fails. As set forth in Section II.C, Haque does not own an independent copyright interest in his individual contributions to the Game, which is a single work of authorship.

Because the Amended Complaint fails to plead the existence of an enforceable contract obligating Defendants to pay Haque a revenue share in perpetuity, and because Plaintiffs allege that Defendants paid Haque during the period he provided services, the breach of contract claim should be dismissed.

**B. Plaintiffs' Implied Covenant Claim Fails Because It Is Duplicative of Plaintiffs' Deficient Contract Claim.**

The implied covenant of good faith and fair dealing "cannot be used to add a new term to a contract." *D&L Holdings v. Goldman Co.*, 287 A.D.2d 65, 73 (1st Dep't 2001). It "only impose[s] an obligation consistent with other mutually agreed upon terms in the contract," *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005) (internal quotations and citation omitted), and "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract," *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal quotations

and citation omitted). A plaintiff invoking the covenant thus "bears a heavy burden," and must show "that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole." *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978). Plaintiffs do not come close to meeting that burden.

Plaintiffs' implied covenant claim, like their contract claim, seeks to rewrite the parties' agreement by imposing an obligation on Defendants to pay Haque a revenue share in perpetuity. But this is the very term that Plaintiffs failed to plead in their contract claim. An implied obligation cannot supply it. An implied obligation is viable only where it "may be presumed to have been intended by the parties." *M/A-COM*, 904 F.2d at 136. But no such intent can be presumed here. Where a party's negotiated arrangement, as here, had no agreed term, no fixed duration, and no promise of continued payment, to imply one would not enforce the parties' bargain but remake it. *D&L Holdings*, 287 A.D.2d at 73; *see Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983) (declining to read duration term into contract that was of "indefinite duration" and so terminable at will "under traditional principles"). Absent an "express[] and unequivocal[]" agreed-upon term, the parties' relationship was terminable at will. *Compania*, 976 F.3d at 245. The implied covenant "does not give rise to new, affirmative duties on contracting parties." *Id.* at 248.

The implied covenant claim is also duplicative of Plaintiffs' deficient contract claim and fails for that independent reason. A claim for breach of the implied covenant must be dismissed where, as here, it arises from the same facts as the breach-of-contract claim and seeks the same relief. *Engelhard Corp. v. Research Corp.*, 268 A.D.2d 358, 358–59 (2d Dep't 2000). Plaintiffs' implied covenant claim rests on the same alleged conduct as the contract claim—a promise to pay Haque in perpetuity. Am. Compl. (Dkt. 20) ¶¶ 43, 48. It challenges the same acts, invokes the same facts, and demands the same damages, "no less than $7,036,800." *Id.* ¶¶ 44, 49. Because the "same

conduct" is "the predicate for both claims," they are duplicative and the implied covenant claim should be dismissed. *Tobias v. Notations, Inc.*, 2015 WL 4654454, at *3 (S.D.N.Y. July 20, 2015) (internal quotations and citation omitted); *see also Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 230–31 (E.D.N.Y. 2007) (dismissing implied-covenant claim for failure to pay royalties where the plaintiff alleged nothing "beyond" the breach of contract for that failure).

**C. Plaintiffs' Declaratory Judgment Claim Fails Because it is Duplicative of the Other Claims.**

Trial courts have broad discretion to decline jurisdiction to issue a declaratory judgment. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023). Courts in this district routinely dismiss declaratory judgment claims that are duplicative of other causes of action brought in the same litigation. *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018) ("Courts generally reject a DJA claim when other claims in the suit will resolve the same issues.").

Plaintiffs' declaratory judgment claim serves no purpose independent of the contract and implied covenant claims, and should therefore be dismissed.[4] Plaintiffs seek a declaration that the December 2025 reduction in Haque's revenue share from 20% to 10%, and the January 2026 reduction to 0%, are "void and without legal effect." Am. Compl. (Dkt. 20) ¶¶ 35-36. In other words, Plaintiffs seek a declaratory judgment obligating Defendants to pay Haque a 20% revenue share in perpetuity. But that is precisely the issue that Plaintiffs ask the Court to resolve through their contract and implied covenant claims. In support of their contract claim, Plaintiffs allege that "Defendants breached their contract by reducing Haque's Roblox group-payout allocation to

---

[4] Dismissal is warranted for an additional reason. Plaintiffs attempt to plead declaratory judgment as a standalone claim for relief. But "declaratory judgments . . . are remedies, not causes of action." *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). Count I therefore fails independently because it seeks a remedy for alleged wrongdoing already addressed by Plaintiffs' substantive causes of action.

zero." *Id.* ¶ 43. Similarly, Plaintiffs allege that Defendants breached the implied covenant of good faith by "coercing Haque into purportedly relinquishing half of his ownership interest" and by "unilaterally removing Haque from all . . . revenue-sharing arrangements associated with Anime Vanguards." *Id.* ¶ 48. Because the declaratory judgment claim "seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action," it should be dismissed. *SoFi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006).

Moreover, it bears repeating that there is no merit to Plaintiffs' declaratory judgment claim. As the Court observed during the TRO hearing, Haque agreed to reduce his revenue share from 20% to 10%. Decter Decl., Ex. A (Dkt. 44) at 13:24-25. And Plaintiffs allege no enforceable agreement obligating Defendants to pay Haque a 20% (or 10%) revenue share in perpetuity. *See supra* Section I.A. Therefore, this claim must be dismissed.

### D. Plaintiffs' Unjust Enrichment Claim Fails Because It Arises from the Same Subject Matter as the Parties' Alleged Agreement.

To state a claim for unjust enrichment, a plaintiff must allege that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that "equity and good conscience" require restitution. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012). An unjust enrichment claim that arises out of the "same subject matter" as an alleged agreement fails as a matter of law. *MG W. 100 LLC v. St. Michael's Protestant Episcopal Church*, 127 A.D.3d 624, 626 (1st Dep't 2015) (citing *Clark Fitzpatrick, Inc. v. LIRR*, 70 N.Y.2d 382, 388 (1987)). The claim is "not a catchall cause of action," and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Here, Plaintiffs' unjust enrichment claim fails because it arises out of the "same subject matter" as the parties' alleged agreement. Plaintiffs claim that Haque "conferred substantial

benefits on defendants by . . . authoring code, visual effects, [and] animations" for the Game, but that Defendants did not properly compensate Haque. Am. Compl. (Dkt. 20) ¶¶ 77-78. This is the basis for Plaintiffs' contract claim—that Defendants promised to compensate Haque for his services but breached that obligation.

The unjust enrichment claim also fails because Plaintiffs have not alleged facts showing that "equity and good conscience" require restitution. Courts ask "whether the plaintiff has alleged an expectation of compensation that was denied." *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 740–41 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012). Equity "counsel[s] *against* retroactively altering the parties' clear agreements" where "the transaction occurred exactly as advertised." *Id.* (emphasis added); *see also In re Akanmu*, 502 B.R. 124, 138 (Bankr. E.D.N.Y. 2013) (finding no claim where party received the benefits of the transaction). Here, Haque received exactly what was expected. Plaintiffs concede that Haque was paid for his services at the agreed-upon rate while he worked on the Game. Am. Compl. (Dkt. 20) ¶¶ 19, 25-26, 39. After Haque was terminated on January 14, 2026, he performed no services and conferred no benefit; there was no enrichment at his expense, and no reasonable expectation that he should receive compensation in perpetuity. *Id.* ¶¶ 27, 43. He was paid when he was working, and not paid when he was not working. Plaintiffs allege nothing that would entitle Haque to a revenue share for periods when he performed no services.

Finally, to the extent Plaintiffs base their unjust enrichment claim on Defendants' continued use of Haque's code, visual effects, and other contributions to the Game, that claim is preempted by the Copyright Act. The Copyright Act preempts any state law claim that (1) concerns a work within the subject matter of copyright, and (2) seeks to enforce rights equivalent to those protected by copyright law. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir.

1997); 17 U.S.C. § 301. "Where the gravamen of an unjust enrichment claim is that defendants unjustly benefitted from unauthorized use of a work within the scope of the Copyright Act . . . the claim is preempted." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 170 (S.D.N.Y. 2024) (internal quotations and citation omitted).

Computer code, visual effects, and animations fall squarely within the subject matter of copyright. *See, e.g.*, *Atari Games Corp. v. Oman*, 888 F.2d 878, 882 (D.C. Cir. 1989) ("Video games . . . rank as 'audiovisual works'"); *Stern Elecs., Inc. v. Kaufman*, 669 F.2d 852, 857 (2d Cir. 1982) ("Assessing the entire effect of the game as it appears and sounds, we conclude that its repetitive sequence of images is copyrightable as an audiovisual display."). Plaintiffs' unjust enrichment claim seeks to vindicate rights protected by the Copyright Act, such as reproduction and distribution. 17 U.S.C. § 106; *Hines v. Chappell Music Corp.*, 2022 WL 3646206, at *2–3 (S.D.N.Y. Aug. 23, 2022). Therefore, to the extent Plaintiffs claim that Defendants were unjustly enriched by using Haque's "code, visual effects, animations, and other creative works that became integral" to the Game (*see* Am. Compl. (Dkt. 20) ¶ 77), Plaintiffs' unjust enrichment claim seeks to vindicate rights equivalent to those protected by copyright law and is preempted.

## II. THE COURT FOUND NO LIKELIHOOD OF SUCCESS ON PLAINTIFFS' BREACH OF FIDUCIARY DUTY, CONVERSION, AND COPYRIGHT CLAIMS, AND THEY SHOULD NOW BE DISMISSED

Plaintiffs also plead three alternative theories of liability: breach of fiduciary duty, conversion, and copyright infringement. These claims fail because they merely repackage the same grievance about Haque's revenue share. In denying Plaintiffs' TRO application, this Court held that Plaintiffs had not shown a likelihood of success on any of these claims. Decter Decl., Ex. A (Dkt. 44) at 44:10-13. They should now be dismissed.

**A. The Breach of Fiduciary Duty Claim Fails Because Plaintiffs Do Not Allege a Partnership or Other Fiduciary Relationship.**

Under New York law, "[t]o state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Next/Ingle Holdings, LLC v. GSPP HOLDCO III, LLC*, 2026 WL 1398474, at *9 (S.D.N.Y. May 19, 2026) (quoting *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020)). Here, the Amended Complaint identifies only one purported basis for a fiduciary relationship: Plaintiffs' allegation that Haque and Defendants were "partners." Am. Compl. (Dkt. 20) ¶¶ 8, 18. Plaintiffs' conclusory allegation that Haque and Defendants were "partners" in *Anime Vanguards* does not make it so.

To allege a partnership, the facts must establish (1) the sharing of profits *and* losses; (2) joint control and management; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge; and (4) the parties' intention to be partners. *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004). "The absence of any one element is fatal" to establishing a partnership. *Id.* (internal quotations removed). Partnership turns on "concrete indicia" of what the parties did and outwardly agreed to, not on one participant's private characterization. *ACLI Gov't Sec., Inc. v. Rhoades*, 813 F. Supp. 255, 257 (S.D.N.Y.), *aff'd sub nom. Gov't v. Rhoades*, 14 F.3d 591 (2d Cir. 1993).

While Plaintiffs repeatedly refer to Haque as Defendants' "partner", Plaintiffs do not allege any of the requisite elements of a partnership under New York law.[5] The Amended Complaint does not explain who comprised the alleged partnership, what each participant agreed to contribute, what authority each possessed, how management decisions were allocated, or—

[5] Plaintiffs do not contend that Boss Studio was Defendants' partner; Boss Studio is merely the alleged assignee of Plaintiffs' claims. This again begs the question of how Haque has standing to sue.

crucially—whether any participant agreed to share losses. Nor does the Amended Complaint identify any partnership agreement, whether written or oral, setting forth the parties' mutual obligations. Plaintiffs also do not allege any hallmarks of a partnership—*e.g.*, that the parties maintained partnership books and records, filed partnership tax returns, held partnership bank accounts, or otherwise operated as a distinct partnership entity. Accordingly, and as set forth in greater detail below, the Court should dismiss the fiduciary duty claim.

1. *Plaintiffs Fail To Allege That the Parties Mutually Intended To Form a Partnership*

"[B]eing a party to a contract does not itself impose a fiduciary duty." *Banco Espiritu Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003), *aff'd* 110 Fed. App'x 191 (2d Cir. 2004). Where, as here, the parties' alleged contract does "not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *Grand Pac. Fin. Corp. v. 97-111 Hale, LLC*, 123 A.D.3d 764, 767 (2d Dep't 2014) (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20 (2005)).

As the Court aptly stated at the TRO hearing, the parties "never characterized their relationship as a partnership prior to hiring a lawyer." Decter Decl., Ex. A (Dkt. 44) at 20:3-6. At most, the Amended Complaint describes an implied-in-fact contract for Haque to provide video-game development services for *Anime Vanguards*. Although Plaintiffs repeatedly invoke the labels "partner" and "partnership," (Am. Compl. (Dkt. 20) ¶¶ 8–9, 51), they fail to convert the parties' alleged quasi-contractual relationship into a fiduciary one.[6]

[6] Indeed, Plaintiffs' fiduciary duty claim is entirely duplicative of the contract claim. This alone warrants dismissal. *See, e.g.*, *Next/Ingle*, 2026 WL 1398474, at *9 ("As a preliminary matter, Plaintiffs' fiduciary duty claim and Plaintiffs' breach of contract claims are duplicative because both claims arise out of identical circumstances and [] are based upon identical allegations . . . This alone is sufficient to warrant dismissal.") (internal citation and quotations omitted).

Plaintiffs allege no written partnership agreement, no oral partnership agreement, no capital accounts, and no allocation of authority or responsibility among the supposed partners. They also allege no joint bank account, no partnership books, no partnership tax return, and no authority of any purported partner to bind the others. In fact, the only entity Plaintiffs allege was ever formed is a *corporation*—which Haque was "instructed" to create as a financial conduit and which, by Plaintiffs' own admission, "ultimately has gone unused." Am. Compl. (Dkt. 20) ¶¶ 9, 22 (Defendants "instructed Haque to form a *New York corporation* for the partnership to use"); *accord* Haque Decl. (Dkt. 29) ¶ 9.

While Plaintiffs allege that Haque was designated a "co-owner" in "the Roblox system" and in the Game's official Discord server, this lone allegation is insufficient to plead a mutual intent to form a partnership. Am. Compl. (Dkt. 20) ¶¶ 20, 26, 39; Decter Decl., Ex. A (Dkt. 44) at 15:24–16:10, 20:1-14. At most, it is a payout designation within an online gaming project; it does not establish that the parties intended to form a legal partnership under New York law.

Because Plaintiffs plead "nothing that demonstrates an intent to enter into anything other than a simple contractual relationship", the Court should dismiss Plaintiffs' fiduciary duty claim. *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 348 (S.D.N.Y. 2001) (dismissing fiduciary duty claim on this basis).

2. <u>*Plaintiffs Fail To Allege a Loss-Sharing Agreement*</u>

Plaintiffs similarly fail to allege the sharing of losses—"[a]n indispensable essential of a contract of partnership." *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958) (emphasis added). If there was no "mutual promise or undertaking of the parties to … *submit to the burden of making good the losses*" there can be no partnership. *Id.* (emphasis added); *see also Slabakis v. Schik*, 164 A.D.3d 454, 455 (1st Dep't 2018) ("The failure to provide for the sharing of losses from the project is fatal to plaintiff's claim".). "[T]he mere fact that an individual stands to lose the value of his or

her services rendered in connection with a collaborative business effort does not transform that person into a partner or joint venturer without more." *Growblox Scis., Inc. v. GCM Admin. Servs., LLC*, 2015 WL 3504208, at *8 (S.D.N.Y. June 2, 2015).

Here, the Amended Complaint alleges no facts showing that Haque agreed to assume joint liability for the Game's losses and debts. To the contrary, Plaintiffs allege only that Haque received a percentage of the Game's *revenue*. Am. Compl. (Dkt. 20) ¶¶ 39, 59. Under New York law, mere revenue sharing does not create a partnership. N.Y. P'ship Law § 11(3); *Slabakis*, 164 A.D.3d at 455 (failure to provide for the sharing of losses is fatal to the plaintiff's claim); *see also Scott v. Rosenthal*, 2000 WL 1863542, at *3 (S.D.N.Y. Dec. 20, 2000) (profit sharing does not establish a partnership).

Plaintiffs' only allegation regarding loss sharing is that Haque used his own funds to form a *corporation* (not partnership), which was never used. Am. Compl. (Dkt. 20) ¶¶ 9, 22. At most, this shows that Haque contributed some of his own money to the project; it does not demonstrate that he undertook responsibility for the alleged partnership's losses. *See Lebedev v. Blavatnik*, 193 A.D.3d 175, 186 (1st Dep't 2021) (loss-sharing is not established by risking one's own contributions or paying for expenses, which "merely shows that plaintiff agreed to 'act in concert . . . to achieve some stated economic objective'" and "by itself creates no more than a contractual obligation") (quoting *Steinbeck*, 4 N.Y.2d at 317); *see also Kidz Cloz*, 320 F. Supp. 2d at 171 ("[I]t is insufficient for a plaintiff to allege mere joint ownership, a community of interest, or a joint interest in profitability" (internal quotations and citation omitted)). The Court acknowledged this at the TRO hearing. In response to Plaintiffs' argument that there was a partnership because Haque "was putting his own money into the game," the Court noted that there is no "legal basis for saying anybody who does that is a partner." Decter Decl., Ex. A (Dkt. 44) at 17:2-6.

3. *Plaintiffs Fail To Allege Joint Control and Management*

Furthermore, Plaintiffs fail to allege that he and Defendants had joint control and management over the alleged partnership. The Amended Complaint instead describes a service provider (Haque) who was "tasked with" duties and "instructed" to act. Am. Compl. (Dkt. 20) ¶¶ 9, 19. Indeed, Plaintiffs concede that Defendants held exclusive control: Plaintiffs allege that on January 14, 2026, Defendants unilaterally removed Haque, stripped him of all access, and retained sole control of the Game. *Id.* ¶ 27; Haque Decl. (Dkt. 29) ¶ 14. That concession is irreconcilable with the allegation that Haque exercised "joint[] control[]." Am. Compl. (Dkt. 20) ¶ 8.

Plaintiffs' only other concrete allegation regarding joint control and management is that Haque signed certain "non-disclosure agreements with contributors on behalf of the project." Am. Compl. (Dkt. 20) ¶¶ 20, 40, 42; Decter Decl., Ex. A (Dkt. 44) at 17:7-11. However, Plaintiffs concede that Defendants made Haque the "acting representative for the business in those dealings" not because they were partners, but rather because Defendants "did not wish to use their legal names in connection with *Anime Vanguards*." Am. Compl. (Dkt. 20) ¶ 20. Moreover, it is common in business ventures for independent contractors, employees, or agents to execute agreements on behalf of projects or businesses without becoming partners in those ventures. *Kidz Cloz, Inc.*, 320 F. Supp. 2d at 173 (holding that plaintiff's acts of holding himself out in the parties' industry as a partner in the company, and carrying a business card listing himself as vice president in the company, were only "cosmetic business moves"). Accordingly, Plaintiffs fail to plead this element.

4. *Plaintiffs Fail To Allege Contributions Beyond Those of an Ordinary Developer*

The final requisite element of a partnership is "mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill, or knowledge." *Slabakis*, 164 A.D.3d at 455. Here, Plaintiffs do not allege that Haque contributed anything to the alleged

partnership above and beyond that of an ordinary videogame developer providing services pursuant to an alleged contractual relationship.

Accordingly, Defendants have not breached a fiduciary duty because they do not owe any such duties to Plaintiffs.

**B. Plaintiffs' Conversion Claim Fails Because Plaintiffs Fail To Allege a Taking.**

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44 (1995) (internal quotations and citation omitted). A plaintiff must allege (1) "legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) "that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Indep. Disc. Corp. v. Bressner*, 47 A.D.2d 756, 757 (2d Dep't 1975).

Where money is the subject of the claim, two limits apply. First, conversion "cannot be predicated on a mere breach of contract." *Priolo Commc'ns, Inc. v. MCI Telecommunications Corp.*, 248 A.D.2d 453, 454 (2d Dep't 1998); *see also Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982) (conversion will not lie "where damages are merely being sought for breach of contract"). A plaintiff "must allege acts that constitute unlawful or wrongful behavior *separate from a violation of contractual rights*." *Elma RT v. Landesmann Int'l Mktg. Corp.*, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (emphasis added). Second, "the mere right to payment" is not a cognizable possessory interest that can "be the basis for a cause of action alleging conversion." *Daub v. Future Tech Enter., Inc.*, 65 A.D.3d 1004, 1006 (2d Dep't 2009). A "plaintiff must have either possessed the money or had a right to immediate possession of the money." *Barnet v. Drawbridge Special Opportunities Fund LP*, 2014 WL 4393320, at *21

(S.D.N.Y. Sept. 5, 2014). Both limits are dispositive here and demand dismissal of Plaintiffs' claim.

As the Court noted at the TRO hearing, there is no conversion claim here because there "wasn't a taking." Decter Decl., Ex. A (Dkt. 44) at 12:18. The Court reasoned that Haque "agreed that he would accept the 20 percent. . . . No one stole this from him." *Id.* at 12:18–22. To the extent Haque insists that Defendants are obligated to pay him this 20 percent in perpetuity—that is Plaintiffs' contract claim. It does not constitute a separate conversion claim. The alleged right is identical: a right to 20% of the Game's general revenue. Am. Compl. (Dkt. 20) ¶¶ 39, 58. The alleged violation is identical: the failure to pay Haque after he was removed. *Id.* ¶¶ 43, 60. And the relief sought is identical: "no less than $7,036,800." *Id.* ¶¶ 44, 63. The only duty Defendants are alleged to have owed—to pay Haque a share of revenue—"exists solely because of the contract between the parties"; "[o]utside the contract, there was no pre-existing obligation" to pay him. *Elma*, 2000 WL 297197, at *4.

Courts routinely dismiss conversion claims where the plaintiff merely claims a contractual percentage of the defendant's revenue. *See, e.g., id.*; *Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 454 (E.D.N.Y. 2012) (Bianco, J.) (dismissing conversion claim for a share of revenue where "[p]laintiff allege[d] no independent or additional wrong aside from defendant's failure to adhere to the alleged" agreement); *Priolo*, 248 A.D.2d at 454 (conversion claim "merely restates" contract claim and "does not allege a separate taking"). This case is no different.

Plaintiffs' claim also fails because Haque has no possessory interest in the money sought. His alleged entitlement is a right to be paid a percentage of revenue. Am. Compl. (Dkt. 20) ¶¶ 18, 27, 39, 43, 59. This "mere right to payment cannot be the basis for a cause of action alleging conversion." *Daub*, 65 A.D.3d at 1006 (dismissing conversion claim "based upon an alleged

contractual right to payment where the plaintiff never had ownership, possession, or control of the disputed funds"). A debt, in other words, is not a possessory interest in specific chattel. That Plaintiffs' claimed recovery grows with every dollar the Game earns, and rests on projected revenue, Am. Compl. (Dkt. 20) ¶ 31, confirms this point. Plaintiffs seek a share of revenue, not ownership of any existing fund. For all these reasons, the conversion claim must be dismissed.

### C. Plaintiffs' Copyright Claim Fails Because Haque Does Not Own an Enforceable Copyright in His Contributions to the Game.

To prevail on a copyright infringement claim, Haque must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Haque cannot establish those elements as a matter of law.

"Copyright protection subsists . . . in original works of authorship," 17 U.S.C. § 102(a), which include "motion pictures and other audiovisual works," *id.* § 102(a)(6). "Authors are not entitled to copyright protection except for 'works of authorship' they create and fix." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 258 (2d Cir. 2015) (quoting 17 U.S.C. § 102(a)). Thus, an individual's "contribution to an integrated 'work of authorship' such as a film is not *itself* a 'work of authorship' subject to its own copyright protection." *Id.* at 259.

Plaintiffs' copyright claim therefore fails as a matter of law. *Anime Vanguards* is a single, integrated "work of authorship." Under well-settled Second Circuit law, Haque does not own a copyright in his individual contributions to that unitary work.[7] And he does not allege that he owns or co-owns the copyright in the Game itself, which pre-existed his involvement.

[7] It is unclear whether Haque assigned his alleged copyrights in his individual contributions to plaintiff Boss Studio. Absent a formal assignment, Boss Studio lacks standing to sue. *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 414 (2d Cir. 2018). And if the copyright was assigned, Haque lacks standing to sue.

The Second Circuit's decision in *16 Casa Duse* is directly on point. There, a director hired by a production company conceded (like Haque) that he was not a joint author of the film, but claimed copyright ownership in his individual creative contributions to it. 791 F.3d at 255. The Second Circuit rejected that theory, holding that the film was the relevant "work of authorship" and that copyright did not separately subsist in the myriad artistic contributions incorporated into it. *Id.* at 258. A contrary rule, the court recognized, would create a "legal morass," making "Swiss cheese of copyrights." *Id.* (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 742 (9th Cir. 2015) (rejecting actress's claim of copyright ownership in her performance in film)).

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*, 2017 WL 2118342 (N.D. Cal. May 16, 2017) applied the same rule to a video game assembled from characters and other contributions supplied by numerous developers and community members. The court held that the game was a "unitary work," not a collection of separately copyrightable contributions: "Heroes do battle in teams on fictional battlefields—together. They do not stand alone in self-contained bubbles." *Id.* at *8. Copyright did not separately subsist in each hero or other game element contributed for integration into the game. *Id.* at *10–11.

The same rule controls here. *Anime Vanguards* is a single, integrated audiovisual work under Section 102(a)(6). Am. Compl. (Dkt. 20) ¶¶ 13, 18-19. Haque's code and other alleged contributions, like the director's contributions in *16 Casa Duse*, the actress's performance in *Garcia*, and the individual heroes and game elements in *Blizzard*, were created for incorporation into that unitary work. *Id.* ¶ 19. He does not contend otherwise. They are not separate works of authorship in which copyright independently subsists. Only the author or authors of *Anime Vanguards* itself own the copyright in the Game.

Haque does not allege that he is an author or co-author of *Anime Vanguards*. To the

contrary, Haque submitted a sworn statement that he "did not intend [sic] my authorship to merge with anyone else's[.]" Haque Decl. (Dkt. 29) ¶ 5; *see also* Pls.' Mem. of Law in support of App'n for TRO (Dkt. 26) at 6 n.2 ("*Anime Vanguards* is not a joint work."). That concession forecloses any claim that Haque is a joint author. It leaves him asserting copyright only in his individual contributions, precisely the theory rejected by *16 Casa Duse*, *Garcia*, and *Blizzard*. Because those contributions are inseparable parts of the Game rather than independent works of authorship, Haque owns no copyright that Defendants could have infringed.[8]

The copyright claim therefore fails. *Anime Vanguards* is a unitary work, and Haque's alleged contributions do not give rise to separate copyrights that Defendants could have infringed.

## III. FURTHER AMENDMENT OF THE COMPLAINT WOULD BE FUTILE

Leave to amend should be denied where amendment would be "futile." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Amendment is futile where "the proposed claim could not withstand a motion to dismiss." *Id.* Where a claim's defect "is substantive[,] . . . better pleading will not cure it," and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiffs have already amended once. The deficiencies identified above are legal defects inherent in Plaintiffs' claims and theory of the case, and cannot be cured. The Court should therefore dismiss the Amended Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, Popov respectfully requests that the Court dismiss the Amended Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper.

[8] Given Haque's sworn statement, Plaintiffs cannot reverse course and recast *Anime Vanguards* as a joint work. Regardless, even if Haque *were* a joint author, "[o]ne joint owner cannot be liable for copyright infringement to another joint owner." *16 Casa Duse*, 791 F.3d at 255 (internal quotations and citation omitted).

DATED: August 28, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Caren Decter*
Caren Decter, Esq.
Jeremy Goldman, Esq.
Regina Gerhardt, Esq.
Peter A. Devlin, Esq.

28 Liberty Street
New York, New York 10005
(212) 980-0120
cdecter@fkks.com
rgerhardt@fkks.com
pdevlin@fkks.com

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
jgoldman@fkks.com

*Attorneys for Defendant Vladislav Popov*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), the undersigned certifies that this Memorandum of Law, excluding the caption, index, table of contents, table of authorities, signature blocks, and required certificates, consists of 8,388 words, which was determined using Microsoft Word's word count function.

*/s/ Regina Gerhardt*
Regina Gerhardt