UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOSS STUDIO LLC, a Wyoming LLC; and REHAAB HAQUE, an individual,<br><br>Plaintiffs,<br><br>-against-<br><br>VLADISLAV POPOV, an individual; and ANDREI ACUÑA, an individual,<br><br>Defendants. | Case No.: 1:26-cv-04323-GBD |

**DEFENDANT VLADISLAV POPOV'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS**

FRANKFURT KURNIT KLEIN + SELZ, PC
Caren Decter
Jeremy Goldman
Peter A. Devlin
Regina Gerhardt
28 Liberty Street, 35th Fl.
New York, NY 10005
(212) 980-0120
cdecter@fkks.com
jgoldman@fkks.com
pdevlin@fkks.com
rgerhardt@fkks.com

*Attorneys for Defendant Vladislav Popov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I. PLAINTIFFS HAD NO BASIS FOR MOVING *EX PARTE* ........................................ 2

II. PLAINTIFFS HAD NO BASIS FOR ASSERTING THAT THEY WOULD SUFFER IRREPARABLE HARM ABSENT EMERGENCY RELIEF ........................ 4

III. BINDING PRECEDENT FORECLOSED PLAINTIFFS' ASSERTED LEGAL BASIS FOR THE TRO APPLICATION ................................................. 6

IV. IN TRYING TO REBUT AN INFERENCE OF BAD FAITH, PLAINTIFFS MISREPRESENT THE RELIEF SOUGHT AND BOSS STUDIO'S STATUS AS A COMPETITOR OF *ANIME VANGUARDS* ................................................ 7

CONCLUSION ........................................................................................................ 10

CERTIFICATION .................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*,
415 U.S. 423 (1974)....2

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)....6, 7

*Gucci America, Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)....7

*Leadenhall Capital Partners LLP v. Advantage Capital Holdings LLC*,
171 F.4th 155 (2d Cir. 2026)....6, 7

*Levy v. Young Adult Inst., Inc.*,
2015 WL 170442 (S.D.N.Y. Jan. 13, 2015)....4, 5, 7

*Liebowitz v. Bandshell Artist Mgmt.*,
6 F.4th 267 (2d Cir. 2021)....5

**Other Authorities**

Fed. R. Civ. P. 65(b)(1)....2, 3

Local Civil Rule 6.1(d)....3

## INTRODUCTION

Defendant Popov's opening brief demonstrated that Plaintiffs and their counsel abused emergency judicial process to burden a competitor by moving *ex parte* to freeze $8+ million of *Anime Vanguards*' revenue. This crossed the line from zealous advocacy to sanctionable conduct. Plaintiffs' opposition only adds to their misconduct.

Plaintiffs' opposition makes multiple misrepresentations to this Court, compounding their counsel's prior misrepresentations at the TRO hearing. First, they claim that their application only sought "to preserve a *portion* of Game revenue . . . *within defendants'* Roblox accounts." Opp. (ECF No. 47) at 13 (emphasis added). That is demonstrably false. Plaintiffs' application sought to restrain "*any Game Revenue*, up to an amount of $8,150,480" and was not limited to Defendants' accounts. Proposed Order (ECF No. 27) at 2 (emphasis added).

Second, in an effort to dispute that their *ex parte* application was filed in bad faith to freeze a competitor's operating revenue, Plaintiffs claim that they no longer compete with Defendants, as their anime game (*Anime Last Stand*) has been "dormant for months." Opp. (ECF No. 47) at 17. This is also not true. *Anime Last Stand*'s game page on the Roblox platform shows a "Favorites" count of over 700,000, a "Visits" count of over 1 billion, and an "Updated" date of August 30, 2026. Devlin Decl. ¶ 3, Ex. 1. Boss Studio's public posts on *Anime Last Stand*'s Discord server with over 800,000 members confirm that, in the very weeks surrounding the TRO hearing and up through Plaintiffs' opposition to this motion, Boss Studio was regularly releasing new content for the game, hiring new developers, fixing bugs, and engaging with its player community to set a roadmap for future launches. Devlin Decl. ¶¶ 4-5, Exs. 2, 3. As recently as August 30, following a major relaunch, Boss Studio posted: "This version of ALS will forever remain open and updated." These posts describe anything but a game that has been "dormant."

In addition, Plaintiffs' opposition fails to provide any defensible basis for moving,

without notice, to freeze $8+ million of *Anime Vanguards*' revenues in order to secure a potential monetary judgment. Plaintiffs have no real answer to the Court's express finding that they lacked a basis *to even argue* for emergency relief—the very definition of non-colorable conduct. Plaintiffs' unsuccessful TRO application depended on the specious premise that Defendants were moving *Anime Vanguards*' revenue offshore to avoid a potential judgment. The Court did not simply reject that factual premise, it found there was ***not even a "basis to argue"*** the premise at all. Tr. (ECF No. 44-1) 44:16-19. Plaintiffs' opposition nonetheless insists that there was "ample evidence" for this premise, even though Plaintiffs' counsel told the Court at the TRO hearing three separate times that Plaintiffs had no evidence and needed expedited discovery to uncover it. Opp. (ECF No. 47) at 17; Tr. (ECF No. 44-1) 3:8-13, 23:20–24:2, 24:19-20. Plaintiffs also had no colorable legal basis to freeze the *Anime Vanguards*' revenue to secure a compensation claim. Supreme Court and Second Circuit precedent foreclose freezing assets to secure a money judgment, yet Plaintiffs' opposition ignores these cases entirely.

The Court should impose sanctions on Boss Studio and Plaintiffs' counsel to compensate Popov for the fees and expenses incurred in defense of Plaintiffs' baseless and bad faith application.

## ARGUMENT

### I. PLAINTIFFS HAD NO BASIS FOR MOVING *EX PARTE*

Notice and an opportunity to be heard are fundamental tenets of the judicial process. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974). Rule 65(b)(1) permits relief without notice only where "(A) *specific facts* in an affidavit or a verified complaint clearly *show that immediate and irreparable injury, loss, or damage will result* to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice *and the reasons why it should not be*

*required*." Local Civil Rule 6.1(d) likewise requires a "clear and specific showing."

Plaintiffs' opposition claims that their decision to move *ex parte* was justified because they had a "genuine concern that defendants would empty their Roblox accounts if they had notice of the motion." Opp. (ECF No. 47) at 15 (citing Levy Decl. (ECF No. 30) ¶ 3). However, the Court asked Plaintiffs' counsel point-blank at the TRO hearing, "Is there any reason to believe that's occurring?" Tr. (ECF No. 44-1) 3:8-9.[1] Plaintiffs' counsel was forced to admit, "We don't know it's been occurring." *Id.* at 3:11. When the Court again pressed whether Defendants had taken any step to place funds beyond reach, counsel merely said, "we presume — we need discovery to know for sure." *Id.* at 23:20–24:2. And when asked yet again, counsel admitted: "We have no direct evidence, your Honor." *Id.* at 24:19-20. The Court responded: "You can't just guess that. You say that you don't know. If you don't know, I can't use that as a basis for giving you an injunction." *Id.* at 25:10-12.

Plaintiffs' opposition has no real defense to this—except to say that "counsel's admission that plaintiffs do not definitively 'know' that defendants' money is being funneled abroad . . . is not proof of bad faith." Opp. (ECF No. 47) at 16. But an *ex parte* motion for an $8 million asset freeze requires far more than mere speculation. It requires "specific facts in an affidavit" that "clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1).

In a last-ditch effort to justify their decision to move *ex parte*, Plaintiffs' opposition

---

[1] Plaintiffs' suggestion that Popov improperly filed the transcript publicly is incorrect. Opp. (ECF No. 47) at 6 n.1. Docket entries 41 and 42 are the Clerk's standard notice implementing the Judicial Conference transcript policy, not an order of this Court as Plaintiffs contend. S.D.N.Y. ECF Rule 13.23. The notice informs the public that remote PACER access to a reporter-filed transcript is restricted for 90 days. During this time, the transcript can still be obtained by the public from the Clerk's Office public terminals or purchased from the court reporter. ECF No. 41. The transcript of an *open, unsealed hearing* is not confidential, and the automatic redaction procedure reaches only the personal identifiers listed in Fed. R. Civ. P. 5.2, none of which appear here, as Plaintiffs concede.

introduces for the first time a Discord message from an *Anime Vanguards* developer dated on or about August 13, 2026, which reports that Defendants had temporarily reduced developer salaries. Opp. (ECF No. 47) at 16; Haque Decl. (ECF No. 49) ¶ 2 & Ex. 1. However, this Discord message is from two weeks *after* the TRO was denied. Accordingly, it cannot possibly supply a colorable basis for Plaintiffs' decision *back in July* to move *ex parte*. Moreover, Plaintiffs nowhere explain how the alleged reduction in salaries referenced in the communication shows that Defendants were trying to place funds beyond Plaintiffs' reach in order to avoid a potential judgment. Indeed, the opposition concedes that "[i]t is unclear what defendants are doing with these salaries." Opp. (ECF No. 47) at 16.

Plaintiffs' decision to move *ex parte* is alone sanctionable.

## II. PLAINTIFFS HAD NO BASIS FOR ASSERTING THAT THEY WOULD SUFFER IRREPARABLE HARM ABSENT EMERGENCY RELIEF

Not only did Plaintiffs have no basis to proceed *ex parte*; their opposition also confirms that they had no basis to argue that they would be irreparably harmed absent emergency relief. It is well-established that irreparable harm "is the 'linchpin' of a court's determination of whether a preliminary injunction is available." *Levy v. Young Adult Inst., Inc.*, 2015 WL 170442, at *4 (S.D.N.Y. Jan. 13, 2015) (quoting *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985)).

Plaintiffs' opposition contends that their "claim of irreparable harm was reasonable" because it was based on changes that Defendants made to *Anime Vanguards* in May, and these changes, they contend, risked turning "a recurring revenue source into a one-time engagement spike followed by a permanent reduction in monetization potential" that would "jeopardize[] plaintiffs' chances to have their equitable interests vindicated." Opp. (ECF No. 47) at 11–12, 16. However, Plaintiffs tellingly did not (and could not) seek to enjoin Defendants from making updates or changes to *Anime Vanguards* during the pendency of this litigation.

At the TRO hearing, the Court could not "***even see a basis to argue*** that there is evidence that assets are being dissipated or moneys intentionally being placed out of the reach of plaintiffs and to avoid their lawsuit." Tr. (ECF No. 44-1) 44:16–19 (emphasis added). A finding that there is no basis to *even argue* a proposition is a finding that there was no colorable basis for the proposition. *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 282–83 (2d Cir. 2021).

Specifically, at the TRO hearing, the Court asked Plaintiffs' counsel whether they had any basis to believe that these game changes were a "reaction to this litigation." Tr. (ECF No. 44-1) 29:10-11. Plaintiffs' counsel then began to speculate that the game changes were aimed at making a "short-term squeeze on profits" leaving "nothing to collect at the end." *Id.* at 29:12-16. But when the Court pressed as to whether Plaintiffs had "any evidence that such a scheme is afoot," Plaintiffs' counsel was forced to admit that the Court was "right" and they do not have any evidence that Defendants were diverting assets in reaction to the litigation. *Id.* at 29:17-25.

Indeed, Plaintiffs' counsel's fallback position at the TRO hearing was to request expedited discovery in the hope that it would reveal a basis for their application for emergency relief. Plaintiffs' counsel stated, "This is why plaintiffs asked for a 14-day pause on transfers to get expedited discovery on the issue." Opp. (ECF No. 47) at 16–17. But emergency process is not an investigative tool to find the justification for that very process. Plaintiffs were required to have "evidence" of irreparable harm *before* the application was filed. *Levy*, 2015 WL 170442, at *6 (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

Finally, changes made to *Anime Vanguards* in May cannot justify an *ex parte* TRO sought two months later. Plaintiffs respond that they needed time to see the changes "take their toll." Opp. (ECF No. 47) at 17–18. But harm observed over months is not an emergency, as many courts have found. *See* Popov's Opp. to TRO (ECF No. 37) at 10–11 (citing cases). The

Court likewise asked why Plaintiffs had sought relief months after the dispute arose when they "had no basis to allege [Defendants] have done anything inappropriate during this litigation" and had been communicating for months with Popov's counsel. Tr. (ECF No. 44-1) 26:20–27:3. Plaintiffs have no good response to this.

At bottom, the Court has already found that Plaintiffs did not "even" have a "basis to argue" that Defendants were trying to hide funds abroad. Tr. (ECF No. 44-1) 44:16-17. That is the very definition of a non-colorable application. Plaintiffs' opposition fails to show otherwise, and they should be sanctioned to deter such abuse of process and to compensate Popov accordingly.

## III. BINDING PRECEDENT FORECLOSED PLAINTIFFS' ASSERTED LEGAL BASIS FOR THE TRO APPLICATION

Plaintiffs' opposition further confirms that Plaintiffs also lacked a colorable legal basis for their TRO application. The relief sought by Plaintiffs—a restraint on more than $8 million of *Anime Vanguards*' revenue to secure a potential monetary recovery—was barred by controlling precedent. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, the Supreme Court held that a federal court has no equitable authority to restrain a defendant's use of assets in which the plaintiff claims no lien or equitable interest merely to preserve funds that might later satisfy a money judgment. 527 U.S. 308, 310, 320, 330 (1999). Indeed, Plaintiffs' counsel acknowledged at the TRO hearing that "the Supreme Court decision in *Grupo Mexicano* does not allow injunctive relief for a basic contract claim," Tr. (ECF No. 44-1) 11:24–12:2.

At the hearing and in their opposition, Plaintiffs attempt to sidestep *Grupo Mexicano* by emphasizing that they are seeking "final equitable relief in the form of disgorgement of profits, an accounting, a constructive trust, and for conversion," and arguing that courts may freeze assets to preserve these equitable interests. Opp. (ECF No. 47) at 13. However, in *Leadenhall*,

the Second Circuit made clear that equitable labels do not convert a general interest in receiving compensation into an equitable interest in a particular asset. *Leadenhall Capital Partners LLP v. Advantage Capital Holdings LLC*, 171 F.4th 155, 163–64 (2d Cir. 2026). Here, each of Plaintiffs' purported equitable theories arises from the alleged agreement to compensate Haque with a percentage of Game revenue. As the Court recognized, Plaintiffs' "creative legal theories" do not change the fact that this litigation is, in substance, a "standard contract dispute" that did not "merit[] any different analysis." Tr. (ECF No. 44-1) 44:13-16.

Plaintiffs' opposition does not cite *Grupo Mexicano*. It does not cite *Leadenhall*. Plaintiffs instead invoke *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) to argue that courts have authority to issue a prejudgment asset freeze where a plaintiff is pursuing a claim for final equitable relief. *Gucci* clearly does not apply here. *Gucci* upheld a freeze only because the plaintiffs pursued a Lanham Act accounting against counterfeiters, and the funds were traceable "proceeds of [the defendants'] counterfeit sales." *Id.* at 126, 131. As courts in this District have expressly recognized, that exception "applies only in the context of trademark infringement." *Levy*, 2015 WL 170442, at *6. *Gucci* does not establish that a plaintiff may seek security for a money judgment, which *Grupo Mexicano* and *Leadenhall* forbid.

## IV. IN TRYING TO REBUT AN INFERENCE OF BAD FAITH, PLAINTIFFS MISREPRESENT THE RELIEF SOUGHT AND BOSS STUDIO'S STATUS AS A COMPETITOR OF *ANIME VANGUARDS*

The extraordinary scope of Plaintiffs' requested emergency relief, viewed in light of Boss Studio's competitive interest, strongly indicates that Plaintiffs' TRO application was advanced for an improper purpose—*i.e.*, to freeze a competitor's operating revenue. Both at the TRO hearing and in their opposition, Plaintiffs and their counsel compounded their misconduct by making multiple misrepresentations to the Court.

First, Plaintiffs and their counsel claimed that the TRO application only sought "to

preserve a *portion* of Game revenue … *within defendants'* Roblox accounts." Opp. (ECF No. 47) at 13 (emphasis added). That is demonstrably false. Plaintiffs' proposed order sought to restrain "any funds . . . within the Roblox payout system that are generated by or attributable to" *Anime Vanguards*. Proposed Order (ECF No. 27) at 1. At the hearing, Plaintiffs' counsel—perhaps realizing that this extraordinary relief was unjustified—claimed this was not their "intention" and was perhaps "improper drafting on our part." Tr. (ECF No. 44-1) 41:5-16. However, when filing a motion without notice, such "improper drafting" is particularly egregious. Had this application been granted *ex parte*, Defendants would have had no opportunity to make any of these points before losing access to millions of dollars in operating revenue.

Second, in an effort to dispel the notion that Boss Studio sought the freezing order to harm its competitor, Plaintiffs and their counsel have falsely claimed that Boss Studio no longer has a competitive interest. Plaintiffs' counsel volunteered at the TRO hearing that he wished "to dispel the notion that this is a competitor trying to take down another competitor," representing that *Anime Last Stand* "is basically defunct at this point," that "[t]here's very few players left," and that Ha "has very little interest in that game." Tr. (ECF No. 44-1) 40:14-20. Plaintiffs repeat this representation in their opposition, asserting that *Anime Last Stand* "has been dormant for months." Opp. (ECF No. 47) at 17. These representations are false.

Boss Studio's recent public statements show that it is still actively competing against *Anime Vanguards*. From March through the present, Boss Studio has hired developers, delivered regular game content, fixed bugs in the live game, and released major updates. Devlin Decl. ¶¶ 4-5, Exs. 2, 3. The game's Discord server itself has over 800,000 members, and its Roblox page shows that the game has over 700,000 "Favorites" and over 1 billion "Visits." *Id.* ¶ 3, Ex. 1.

Among the many posts and updates, on July 22—two days before Plaintiffs filed their

TRO application—Boss Studio announced a relaunch with "[w]eekly updates, [d]aily sneaks, [d]aily announcements," followed by a major update two days later. *Id.* ¶ 5.l, Ex. 3. In August, it relaunched the game after "600 pages of fixes, changes, and testing," issued patches, released more content, and previewed it for the player community, receiving thousands of reactions. *Id.* ¶ 5.o, Ex. 3. And after filing the opposition, Boss Studio posted a poll asking its community whether one version of the game should "*forever remain open and updated*," which received over 7,000 'yes' votes. *Id.* ¶ 5.t, Ex. 3. Hiring developers, relaunching a game, and shipping regular content is *not* compatible with being "dormant for months." Opp. (ECF No. 47) at 17.

Nor is *Anime Last Stand* Boss Studio's only competing title. Boss Studio also appears to operate a game called *Anime Final Strike*, marketed as "the ultimate anime tower defense game," which is the same genre as *Anime Vanguards* and *Anime Last Stand*. Devlin Decl. ¶ 6, Ex. 4. Boss Studio's CEO, posting under an account identified as "Boss Studio LLC" and bearing the game's owner designation, told that game's community in September 2025 that "Boss Studio is now fully orchestrating development" and that "Boss Studio is here to safeguard the game, push through last-minute hurdles, and carry it forward." *Id.* ¶ 7.a-d, Ex. 5. The game has over 80,000 members on its Discord server and has seen a series of updates and new content in August 2026, with an "Updated" date as recent as August 31, 2026. *Id.* ¶¶ 6, 7.e-f, Exs. 4, 5.

Plaintiffs and their counsel's representations to this Court regarding Boss Studio's lack of a competitive interest are flatly contradicted by Boss Studio's public statements, and serve as further evidence of their misconduct in this litigation. Thus, while Plaintiffs' opposition attempts to distinguish *Agee* and *Enmon* because those cases involved misrepresentations to the court by plaintiffs or plaintiffs' counsel, Plaintiffs and their counsel have made numerous misrepresentations here. Plaintiffs' repeated misconduct further supports an award of sanctions.

## CONCLUSION

The Court should grant Popov's motion and award the attorneys' fees, costs, and expenses incurred with respect to Plaintiffs' TRO application and this motion, in an amount to be established through a supplemental fee submission. The award should be imposed jointly and severally against Boss Studio, Joseph M. Levy, Harry B. Wilson, Markowitz Herbold PC (the "Markowitz Firm"), David M. Peraino, and Peraino Malinowski LLP (the "Peraino Firm") under the Court's inherent powers, and additionally against Mr. Levy, Mr. Wilson, the Markowitz Firm, Mr. Peraino and the Peraino Firm under 28 U.S.C. § 1927.

Dated: New York, New York
September 1, 2026

**FRANKFURT KURNIT KLEIN + SELZ PC**

By: ______________________________

Caren Decter
Jeremy Goldman
Peter A. Devlin
Regina Gerhardt

28 Liberty Street, 35th Fl.
New York, New York 10005
(212) 980-0120
cdecter@fkks.com
jgoldman@fkks.com
pdevlin@fkks.com
rgerhardt@fkks.com

*Attorneys for Defendant Vladislav Popov*

**CERTIFICATION**

The undersigned hereby certifies, pursuant to S.D.N.Y. Local Civil Rule 7.1(c), that the foregoing contains 3168 words exclusive of the caption and signature block.

By: */s/ Peter A. Devlin*

Peter A. Devlin
28 Liberty Street, 35th Floor
New York, New York 10005
(212) 980-0120
pdevlin@fkks.com

*Attorney for Defendant Vladislav Popov*