UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOSS STUDIO LLC, a Wyoming LLC; and REHAAB HAQUE, an individual,<br><br>Plaintiffs,<br><br>-against-<br><br>VLADISLAV POPOV, an individual; and ANDREI ACUÑA, an individual,<br><br>Defendants. | Case No.: 1:26-cv-04323-GBD-JW |

**NON-PARTIES FRANKFURT KURNIT KLEIN + SELZ PC'S AND UNDERSIGNED INDIVIDUAL ATTORNEYS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

FRANKFURT KURNIT KLEIN + SELZ PC
Caren Decter, Esq.
Regina Gerhardt, Esq.
Peter A. Devlin, Esq.
28 Liberty Street, 35th Floor
New York, New York 10005
Telephone: (212) 980-0120
cdecter@fkks.com
rgerhardt@fkks.com
pdevlin@fkks.com

Jeremy S. Goldman, Esq.
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
jgoldman@fkks.com

*Attorneys for Defendant Vladislav Popov*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. PLAINTIFFS' RETALIATORY RULE 11 "CROSS-MOTION" HAS NO LEGAL OR FACTUAL BASIS .......... 1

II. THE COURT SHOULD AWARD THE REASONABLE EXPENSES INCURRED IN OPPOSING THE RULE 11 "CROSS-MOTION" .......... 5

CONCLUSION .......... 6

CERTIFICATE OF COMPLIANCE .......... 8

## PRELIMINARY STATEMENT

Plaintiffs' Rule 11 "cross-motion" is retaliatory, lacks a legal and factual basis, and seeks to duplicate motion practice unnecessarily. Plaintiffs seek Rule 11 sanctions against defense counsel for filing a sanctions motion against Plaintiffs and their counsel. But rather than identify any conduct by defense counsel that allegedly violated Rule 11, Plaintiffs' brief reiterates why they believe that ***Plaintiffs and their counsel*** should not be sanctioned for filing an *ex parte* TRO application to freeze $8+ million of their competitor's operating revenue. Plaintiffs should not be permitted to invoke Rule 11 to get a third (and fourth, on reply) opportunity to oppose Defendant's sanctions motion. Plaintiffs apparently hope that dueling sanctions motions will obscure their own misconduct and lead to the denial of both. But this is not a case of mutual squabbling. Plaintiffs' baseless cross-motion provides no reason to deny Defendant's supported motion.

We respectfully request that the Court deny Plaintiffs' frivolous Rule 11 motion and award the reasonable expenses, including attorney's fees, incurred in responding to it.

## ARGUMENT

### I. PLAINTIFFS' RETALIATORY RULE 11 "CROSS-MOTION" HAS NO LEGAL OR FACTUAL BASIS

A Rule 11 movant "must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The movant must identify a violation of Rule 11(b)(1)–(4) and show that the violation was "objectively unreasonable." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387–88 (2d Cir. 2003). Plaintiffs do neither. The cross-motion neither names nor discusses any of the subsections of Rule 11(b), nor points to any alleged false statement or misstated authority. One of Plaintiffs' lead cases rejected a sanctions request for exactly this failure—*i.e.*, it did not "describe the specific conduct alleged to violate" Rule 11(b) and offered "nothing more than a statement of

the amount of expenses." *Weiss v. Weiss*, 984 F. Supp. 682, 685 (S.D.N.Y. 1997).[1]

Instead of identifying any misconduct by defense counsel, Plaintiffs' brief recites the reasons why the Court should not grant ***Defendant's*** sanctions motion. It is improper for Plaintiffs to use Rule 11 as a vehicle for submitting a second sur-reply to Defendant's sanctions motion. *See* Ha Sur-Reply Decl. (ECF No. 64).

There is no support for Plaintiffs' conclusory assertion that Defendant's sanctions motion was filed "for the sole purpose of harassing Plaintiff, unnecessarily expanding the motion practice necessary in this suit, and delaying a resolution on the merits." Cross-Mot. (ECF No. 65) at 7. It was Plaintiffs' improper *ex parte* motion, and this Rule 11 motion—filed while the sanctions motion and Defendant's motion to dismiss are pending—that duplicate litigation unnecessarily. Rather than allowing the Court to adjudicate the propriety of their unsuccessful *ex parte* motion and the plausibility of their complaint, Plaintiffs have piled on more motion practice.

Plaintiffs assert that Defendant's sanctions motion is aimed at punishing Plaintiffs for availing themselves of their "rights" under Federal Rule of Civil Procedure 65. *Id.* at 4. That assertion is unsupported and false. Defendant moved for sanctions because Plaintiffs filed an *ex parte* TRO application seeking ruinous relief against a competitor without any evidentiary or legal basis to justify the grant of such extraordinary relief, and they did so despite months of contact with defense counsel. At the TRO hearing, Judge Daniels stated that he could not "***even see a basis to argue*** that there is evidence that assets are being dissipated or moneys intentionally being placed out of the reach of plaintiffs and to avoid their lawsuit." Tr. (ECF No. 44-1) at 44:16-19 (emphasis added); *see* Sanctions Mot. Reply (ECF No. 54) at 5. Plaintiffs' disregard of the rules forced

---

[1] Plaintiffs' Rule 11 motion is also procedurally defective as there is no notice of motion. *See* Local Civil Rule 7.1(a)(1), (4).

Defendant to incur substantial litigation expense that compliance would have avoided.

The absence of any evidence of asset dissipation makes Plaintiffs' motivation apparent. Plaintiffs' goal was to freeze the operating revenues of Boss Studio's competitor. When confronted with this, Plaintiffs and their counsel made misleading statements to the Court. To dispel the notion that their request for an asset freeze was "a competitor trying to take down another competitor," Plaintiffs' counsel represented to the Court that *Anime Last Stand* (Boss Studio's competing game) was "basically defunct." Tr. (ECF No. 44-1) at 40:14-20. Plaintiffs' opposition to Defendant's sanctions motion doubled down on this misrepresentation—stating that *Anime Last Stand* had been "dormant for months." Opp. (ECF No. 47) at 17. This was false.

In support of his motion for sanctions, Defendant submitted documentation showing that, both before and after Plaintiffs filed the lawsuit and sought the *ex parte* TRO, Boss Studio was hiring developers, delivering game content, fixing bugs in the live game, and releasing updates. Reply (ECF No. 54) at 8–9; Devlin Decl. (ECF No. 55) ¶¶ 3-7 & Exs. 1–5. Indeed, the day after Plaintiffs filed their TRO application, daily users for *Anime Last Stand* jumped from roughly 6,000 to more than 46,000 after a relaunch. Ha Sur-Reply Decl. (ECF No. 64) ¶ 9. Three more relaunches in August 2026 drove daily users to approximately 118,000, 127,000, and 66,000, respectively, before falling below 8,000 in September. *Id.* ¶ 10. Boss Studio also updated a second competing title, *Anime Final Strike*, in August 2026, for the first time in ten months. *Id.* ¶¶ 16-17. This evidence directly contradicts Plaintiffs' counsel's representation to the Court that their game was "basically defunct"—which itself supports a finding of bad faith—and corroborates Boss Studio's competitive motive for seeking to freeze the market leader's operating revenue.

Plaintiffs also misrepresented the scope of their proposed TRO order by claiming that it sought to restrain revenue only in "Roblox accounts owned by Defendants." Opp. (ECF No. 47)

at 6–7. In reality, it sought to freeze "any funds . . . within the Roblox payout system" attributable to Defendants' game *Anime Vanguards* (Proposed Order (ECF No. 27) at 1), not just funds in Defendants' Roblox accounts—a fact counsel tried to walk back as "maybe . . . improper drafting." Tr. (ECF No. 44-1) at 41:5-16.

Thus, contrary to the allegation in Plaintiffs' Rule 11 motion, Defendant's sanctions motion was not aimed at stifling Plaintiffs' "creative legal theories." Cross-Mot. (ECF No. 65) at 6 (quoting Tr. (ECF No. 44-1) at 44:13-14). Those were "creative legal theories" that Plaintiffs had no "basis to argue" (which their ellipsis conveniently skips). Plaintiffs and their counsel crossed the line from "creative" advocacy to sanctionable conduct when they made their bad-faith *ex parte* application to freeze $8+ million of their competitor's operating revenue without any legal or factual basis, and then tried to deny that their actions were competitively motivated by misleading the Court.[2] Their Rule 11 motion now compounds that misconduct.

Plaintiffs also suggest that Defendant's sanctions motion was unwarranted because any "inconvenience" suffered because of the TRO application was incurred "entirely at [defense counsel's] own discretion." Cross-Mot. (ECF No. 65) at 7. This argument ignores that Plaintiffs

[2] Plaintiffs cite to *Weiss v. Weiss*—a case not cited in their opposition to Defendant's sanctions motion—to support their contention that an unsuccessful TRO application is not *per se* sanctionable. Cross-Mot. (ECF No. 65) at 5. While Plaintiffs' new authority may be relevant to whether Plaintiffs should be sanctioned for filing their TRO application, it has no bearing on whether defense counsel should be sanctioned under Rule 11 for filing Defendant's sanctions motion. Moreover, while the *Weiss* court ultimately decided not to award sanctions, there were factors at play that are not present here—*e.g.*, the sanctions motion failed to comply with the procedural requirements of Rule 11, and there was no evidence that a party was using the powers of the court for improper purposes. 984 F. Supp. at 685–86. Here, the evidence shows that Plaintiffs pursued a freezing order in bad faith and in secret in order to harm a competitor—and made misrepresentations to the Court to hide their true intent. Plaintiffs also cite *Complete Auto Transit, Inc. v. Chauffeurs, Teamsters & Helpers Loc. Union No. 414, Int'l Bhd. of Teamsters*, 848 F. Supp. 848 (N.D. Ind. 1994) to support their opposition to Defendant's sanctions motion. Cross-Mot. (ECF No. 65) at 5–6. But the movant's argument in that case was merely that the court should award sanctions "because the court ruled in [defendant's] favor and against [plaintiff]." *Id.* at 850.

asked this Court, in secret, to freeze over $8 million in operating revenue. Popov Decl. (ECF No. 38) ¶¶ 5, 8-9. No responsible lawyer would have let Plaintiffs' application go unanswered. Nor would any responsible lawyer have put forward less than a full response, regardless of that application's merits. Vigilant counsel's appearance and success in opposing an improper TRO application do not excuse conduct that made the response necessary. Moreover, if the Court had issued the requested TRO, it would be more than a fleeting inconvenience, as Plaintiffs suggest. Plaintiffs cite *Garcia* to argue that a TRO expires no more than ten days after entry. Cross-Mot. (ECF No. 65) at 7 (citing *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 106 (2d Cir. 2009)). However, the ten-day limit in *Garcia* ended in 2009. Rule 65(b)(2) permits 14 days, extendable for good cause.

In sum, Plaintiffs fail to identify any Rule 11 violation, let alone meet their burden of showing that Defendant's sanctions motion was objectively unreasonable. Plaintiffs' Rule 11 motion should be denied.

## II. THE COURT SHOULD AWARD THE REASONABLE EXPENSES INCURRED IN OPPOSING THE RULE 11 "CROSS-MOTION"

Rule 11 provides that, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Such an award is warranted here. FKKS responded to Plaintiffs' counsel's Rule 11 notice, before they filed, explaining why Plaintiffs' Rule 11 demand had no basis. FKKS explained that Defendant's sanctions motion is meritorious and objectively reasonable; it relied on the hearing transcript, this Court's findings, and controlling authority. FKKS also advised Plaintiffs' counsel that if they filed their threatened Rule 11 motion, they would seek the expenses of opposing it under Rule 11(c)(2).

Rather than allow the Court to decide Defendant's pending sanctions motion and motion

to dismiss, Plaintiffs filed this Rule 11 motion. It duplicates motion practice unnecessarily and Plaintiffs' brief functions as an unauthorized second sur-reply to Defendant's sanctions motion. This is an abuse of Rule 11. Rule 11 motions should not be "prepared to emphasize the merits of a party's position," "to intimidate an adversary into withdrawing contentions that are fairly debatable," or "to increase the costs of litigation." Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment. Plaintiffs' Rule 11 motion does all three. The Court should award the fees and costs incurred for defending against this Rule 11 motion.

## CONCLUSION

For these reasons, FKKS and undersigned counsel respectfully request that the Court deny Plaintiffs' cross-motion for sanctions under Rule 11 and award the reasonable expenses, including attorneys' fees, incurred in opposing it.

DATED: October 13, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: ______________________________

Caren Decter, Esq.
Jeremy S. Goldman, Esq.
Regina Gerhardt, Esq.
Peter A. Devlin, Esq.

28 Liberty Street
New York, New York 10005
(212) 980-0120
cdecter@fkks.com
rgerhardt@fkks.com
pdevlin@fkks.com

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone: (310) 579-9600
jgoldman@fkks.com

*Attorneys for Defendant Vladislav Popov*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), the undersigned certifies that this Memorandum of Law, excluding the caption, index, table of contents, table of authorities, signature blocks, and required certificates, consists of 1,833 words, which was determined using Microsoft Word's word count function.

*/s/ Peter A. Devlin*
Peter A. Devlin